Present: Keenan, Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Carrico, S.J.

RONNIE EUGENE FULLWOOD

OPINION BY
v. Record No. 091015          SENIOR JUSTICE HARRY L. CARRICO
February 25, 2010

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal involves the application of Code § 18.2-255.2, which is entitled "**Prohibiting the sale or manufacture of drugs on or near certain properties**." On June 12, 2006, a grand jury in the Circuit Court for the City of Newport News indicted the defendant, Ronnie Eugene Fullwood, on one count of possessing marijuana and one count of possessing cocaine with intent to distribute within 1,000 feet of a school while upon public property or property open to public use in violation of Code § 18.2-255.2.

At the outset of a bench trial in the circuit court, Fullwood moved to dismiss one of the charges against him on the ground that possession of more than one substance with intent to distribute within 1,000 feet of a school constituted only one offense because the possession was based upon a single incident or transaction. The circuit court denied the motion. The court denied similar motions made at the conclusion of the Commonwealth's evidence and at the conclusion of all the evidence, the latter motion adding an argument that both charges

should be dismissed because the possession did not occur on property open to public use.

At Fullwood's sentencing, he again moved the dismissal of one of the charges on the ground that the possession of two substances at the same time constituted only one offense. The circuit court denied the motion and sentenced Fullwood to incarceration with the Virginia Department of Corrections for five years on his marijuana conviction, all suspended, and for five years on his cocaine conviction, with four years suspended. Both suspensions were conditioned upon Fullwood's good behavior for fifteen years and his supervision on probation for one year from the date of his release from custody.[*]

In a published opinion, the Court of Appeals of Virginia affirmed the judgment of the circuit court. Fullwood v. Commonwealth, 54 Va. App. 153, 676 S.E.2d 348 (2009). We awarded Fullwood this appeal.

Code § 18.2-255.2 provides in pertinent part as follows:

> A. It shall be unlawful for any person to manufacture, sell or distribute or possess with intent to sell, give or distribute any controlled substance, imitation controlled substance or marijuana while:
>
> (i) upon the property, including buildings and grounds, of any public or private elementary, secondary, or post secondary school, or any public

---

[*] Fullwood was also convicted of two other drug charges plus a charge of possessing a firearm while simultaneously possessing controlled substances. However, these charges are not involved in this appeal.

2

or private two-year or four-year institution of higher education, or any clearly marked licensed child day center as defined in § 63.2-100;

(ii) upon public property or any property open to public use within 1,000 feet of the property described in clause (i);

. . . .

B. Violation of this section shall constitute a separate and distinct felony. Any person violating the provisions of this section shall, upon conviction, be imprisoned for a term of not less than one year nor more than five years and fined not more than $100,000. A second or subsequent conviction hereunder for an offense involving a controlled substance classified in Schedule I, II, or III of the Drug Control Act (§ 54.1-3400 et seq.) or more than one-half ounce of marijuana shall be punished by a mandatory minimum term of imprisonment of one year to be served consecutively with any other sentence.

BACKGROUND

On the early afternoon of January 20, 2006, Officers Ara M. Hahn and J. S. Turlington of the City of Newport News Police Department conducted surveillance at the Newsome Park apartment complex located on a dead-end street in the city. Off of the end of that street is a cul-de-sac and off of the cul-de-sac is a parking lot serving the complex that is less than six hundred feet from the Newsome Park Elementary School.

The apartment complex is located on private property posted with "No Trespassing" signs. There was also a letter on file with the Police Department authorizing the police to enforce the "No Trespassing" prohibition.

3

The police suspected that an "open-air drug market" was being operated on the parking lot; they had made "a lot [of arrests] dealing with narcotics" and had seized "various amounts of mostly marijuana." Officers Hahn and Turlington positioned themselves in a vacant apartment overlooking the parking lot. Using binoculars, Officer Hahn saw Fullwood pull into the parking lot and park his car near a dumpster. He alighted from the car and remained in the area talking to "people out there loitering around."

About 3:30 p.m., a pickup truck pulled into the parking lot and stopped twenty to thirty yards away from Fullwood's car. The driver of the pickup "never got out." Within a twenty-second span, Fullwood approached the driver's window of the pickup, had a brief conversation with the driver, and "appeared to get . . . money, currency" from him. Fullwood then walked to his car, opened the trunk, and got "a small item" out of a backpack. Fullwood walked back to the pickup, where the driver put out his hand, palm up, into which Fullwood "appeared to drop something." Fullwood walked away and entered one of the apartments, where he stayed for "a couple minutes." The driver of the pickup exited the parking lot.

Officer Hahn radioed "surrounding units that were acting as take-down units" and gave them a description of the pickup truck and described what he had observed. J.V. Polak, a sergeant of

4

the Police Department, observed the pickup on a nearby street, conducted a traffic stop, and gave the driver Miranda warnings. Sergeant Polak recovered "[a] clear plastic bag containing suspected marijuana" from the driver.

Officer Hahn later observed another suspected sale when a vehicle pulled into the parking lot and a passenger wearing a "Georgetown Hoyas jacket" got out and engaged Fullwood in a brief conversation. The two then went to the trunk of Fullwood's vehicle where Fullwood retrieved a "plastic bag that looked like it had an off-white substance inside of it." Fullwood "received money" and "did the exchange with the gentleman in the Hoyas jacket," who got into his car and drove away. He was not arrested because Officer Hahn did not have an officer "to take down that suspected buyer."

About 5:43 p.m., Sergeant Polak arrived at the parking lot and observed Fullwood walking around. Polak approached Fullwood, placed him under arrest, and told him that there would be a search of his car. Fullwood told Sergeant Polak that "there was a gun in the trunk," and when Sergeant Polak said he "believed there was marijuana in the trunk," Fullwood said "there was about two ounces in the trunk."

The trunk was opened and on the top of the spare tire Sergeant Polak recovered "a Ruger P95DC semiautomatic handgun with a magazine containing 15 rounds of live ammunition." Polak

5

also found in the backpack a clear plastic bag that contained forty-seven individually wrapped chunks of cocaine, two small pieces of individually wrapped cocaine, another clear plastic bag with a large chunk of crack cocaine, and two clear plastic bags with forty individually wrapped bags of marijuana inside. In addition, Sergeant Polak recovered from Fullwood's pants pockets three pieces of crack cocaine along with $203.00 in cash and a cellular phone.

THE ISSUES

Fullwood does not dispute that he possessed both cocaine and marijuana within one thousand feet of a school or that he intended to distribute both drugs. He does dispute that he possessed the drugs while on public property or property open to public use. On its part, the Commonwealth does not contend that the parking lot where the drugs were possessed is public property. Therefore, only the "property open to public use" portion of Code § 18.2-255.2 is pertinent to our review.

Fullwood also disputes that the circuit court could convict him of possessing both cocaine and marijuana without violating his guarantee against double jeopardy. Thus two questions are presented, (1) whether Fullwood was upon property open to public use while he possessed the drugs, and (2) whether his convictions for possessing both cocaine and marijuana with

6

intent to distribute within 1,000 feet of a school violated the constitutional prohibition against double jeopardy.

Noting that Code § 18.2-255.2 is a penal statute, Fullwood relies on our decisions which have held that such laws "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983); Hughes v. Commonwealth, 33 Va. App. 405, 408, 533 S.E.2d 649, 650 (2000).  We have made it clear that it is a fundamental rule of statutory construction that penal statutes are to be strictly construed against the Commonwealth and in favor of a citizen's liberty.  Harward v. Commonwealth, 229 Va. 363, 365, 330 S.E.2d 89, 92 (1985).  Such statutes may not be extended by implication; they must be applied to cases clearly described by the language used and the accused is entitled to the benefit of any reasonable doubt about the construction of a penal statute. Martin v. Commonwealth, 224 Va. 298, 300-01, 295 S.E.2d 890, 892 (1982).  None of these statements of basic principles, however, warrants the conclusion Fullwood asks us to draw in the circumstances of these offenses.

With respect to the issue whether the parking lot was property open to public use, Fullwood argues that the circuit court construed Code § 18.2-255.2 expansively to cover a case not clearly described by the language used.  He says that

7

because the Newsome Park apartment complex was posted with "No Trespassing" signs, backed up by the letter on file in the Police Department, the parking lot where he possessed the drugs was private and not open to public use.

We disagree with Fullwood. The circuit court made a factual finding that the parking lot was property open to public use, and the record supports that finding. Fullwood does not challenge Officer Hahn's characterization of the parking lot as an "open-air drug market" where the police made "a lot [of arrests] dealing with narcotics," proving that "a lot" of members of the public used the lot. On the day in question, there were "people out there loitering around" in the parking lot and Fullwood spent practically his whole afternoon there, meanwhile serving two drug purchasers who arrived on the scene. The fact that they knew where to go to secure drugs would indicate they had been there before, and from the quantity of drugs Sergeant Polak recovered from the trunk of Fullwood's car, it is obvious Fullwood anticipated the arrival of other potential purchasers of his wares before the day ended. Thus, it is clear on the record before us that the parking lot was "readily accessible" to members of the public who were not residents of the complex or whose presence was not authorized, including Fullwood. People v. Jiminez, 39 Cal. Rptr.2d 12, 13-15 (Cal. Ct. App. 1995); see Smith v. Commonwealth, 26 Va. App.

8

620, 626, 496 S.E.2d 117, 120 (1998) (holding that the area outside a convenience store was "property open to public use" because "[there was] no indication in the record that [the area] was blocked, closed, or in any way inaccessible to the public" and that "the participants to the drug transaction . . . had full access to the property on several occasions.")

The fact that people might have been using the lot for illegal purposes does not affect the question whether it was "property open to public use."  Code § 18.2-255.2(A)(ii) is unambiguous in its meaning; it reads "property open to public use," not "property open to <u>legal</u> public use," and language cannot be added to change its meaning.  <u>Seguin v. Northrop Grumman Systems Corp.</u>, 277 Va. 244, 248, 672 S.E.2d 877, 879 (2009).

There were, of course, many people using the lot for legal purposes, including the tenants of the apartment complex and their visiting friends and relatives, service personnel, mailmen, deliverymen, and others.  More important, there would doubtless be many children, including students from the nearby elementary school, using the lot daily.  It was to protect children from the "<u>threat</u> of harm" posed "when drug transactions take place within 1,000 feet of a school" that Code § 18.2-255.2 was enacted.  <u>Commonwealth v. Burns</u>, 240 Va. 171, 177, 395 S.E.2d 456, 459 (1990).

9

We have not overlooked Fullwood's fervent reliance upon the "No Trespassing" signs posted in the apartment complex. He has repeatedly stressed the presence of the signs during his trial in the circuit court, in the briefs he has filed, and in oral argument before this Court. But he has not once stated where in the apartment complex the signs were posted and, most notably, there is not a shred of evidence in the record even suggesting that a sign was posted at the parking lot. One would expect that had there been a "No Trespassing" sign posted there, Fullwood would have favored us with an enlarged photograph. There being no evidence of any posted restriction on accessing the parking lot, much less active enforcement of such a prohibition, members of the public could not have reasonably anticipated being challenged regarding their use of the lot, and thus we conclude that the parking lot was "property open to public use" within the meaning of Code § 18.2-255.2(A)(ii). See Smith, 26 Va. App. at 626, 496 S.E.2d at 120 (holding that the property in question was "open to public use," in part, because the "participants to the drug transaction . . . had full access to the property . . . with no interruption from the owners of the establishment"); cf. United States v. Smith, 395 F.3d 516, 520-21 (4th Cir. 2005) (holding, in a case involving whether an access road was a "highway" under Virginia law, that "[t]he presence of signs [posted along the roadway] barring public

10

entry establishes that the access road is not open to public use"); Caplan v. Bogard, 264 Va. 219, 225, 226-29, 563 S.E.2d 719, 722, 723-24 (2002) (holding that the lack of a physical barrier preventing "entrance to . . . a privately maintained parking lot" did not alone suffice to raise a presumption that the route was a "highway" under Virginia law, i.e., a route "open to the use of the public for purposes of vehicular travel") (internal quotation marks omitted).

This brings us to the double jeopardy issue. Fullwood argues that the circuit court again violated the principles of statutory construction in convicting him of two violations of Code § 18.2-255.2 and subjecting him to the mandatory minimum penalty for a second offense "even though there was only a single occasion or transaction in which controlled substances were held for sale or distribution."

Fullwood contends that the General Assembly intended in enacting Code § 18.2-255.2 to deter "drug transactions, not the possession of individual drugs per se," and if the intention of the legislature had been to provide for prosecution "on a per-substance basis, it could have indicated so." We cannot add this provision to the statute, Fullwood asserts, and, without it, the statute permits the prosecution of only one offense, regardless of the number of drugs he possessed. Hence, Fullwood concludes, the circuit court's application of the statute

11

permits multiple punishments for the same offense in violation of the double jeopardy clauses of the Constitution of the United States and the Constitution of Virginia.

Both double jeopardy clauses protect against a second prosecution for the same offense after acquittal. They also forbid a second prosecution for the same offense after conviction. And they prohibit multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165 (1977); Blythe v. Commonwealth, 222 Va. 722, 725, 284 S.E.2d 796, 797 (1981).

Whether there has been a double jeopardy violation presents a question of law requiring a de novo review. See United States v. Imngren, 98 F.3d 811, 813 (4th Cir. 1996). In such a review, the rule is that "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown, 432 U.S. at 165.

We disagree with Fullwood's contention that there was only a single transaction in which controlled substances were held for sale or distribution within 1,000 feet of a school and which would support only one conviction. There was one transaction involving marijuana in Fullwood's encounter in the parking lot with the driver of the pickup truck and a second transaction

12

involving cocaine in Fullwood's meeting in the parking lot with the driver wearing a "Hoyas jacket."

Code § 18.2-255.2 clearly makes these two transactions two offenses and displays the legislative intent that they should be subject to multiple punishments.  Subsection B of the statute provides that "[v]iolation of this section shall constitute a separate and distinct felony" with punishment at a certain level for a first conviction but at an enhanced level for a "second or subsequent conviction" involving certain classified controlled substances or more than one-half ounce of marijuana.  To hold that Fullwood's two transactions constituted only one offense would amount to writing out of the statute the language concerning a "second or subsequent conviction," and we are not inclined to do that.

CONCLUSION

We hold that the circuit court did not err in finding that the violations in question occurred on "property open to public use" under Code § 18.2-255.2(A)(ii) and that the court did not exceed its legislative authorization in sentencing Fullwood to multiple punishments.  Accordingly, we will affirm the judgment of the Court of Appeals.

Affirmed.

13