COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, McCullough and Senior Judge Clements
Argued at Richmond, Virginia

MICHAEL N. CURRIER

v.      Record No. 1428-14-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE STEPHEN R. McCULLOUGH
DECEMBER 15, 2015

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

J. Addison Barnhardt (Grisham & Barnhardt, PLLC, on briefs), for
appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Michael N. Currier challenges his conviction for possession of a firearm after having been

convicted of a violent felony.  He argues that the Double Jeopardy Clause, and particularly its

collateral estoppel protections, bar his conviction.  He also contends that the trial court abused its

discretion in concluding that evidence of appellant's involvement in a breaking and entering and a

grand larceny were relevant and not prejudicial to his charge of being a felon in possession of a

firearm.  We disagree and affirm.

BACKGROUND

Paul Garrison, II, returned home from work on March 7, 2012 to find that someone had

broken into his home.  A large gun safe containing cash, personal papers, and 20 guns was gone.

The safe was later located, partially submerged in the Rockfish River in Nelson County.  Police

recovered it and discovered that the lock mechanism had been destroyed and removed.  The

firearms were badly damaged from the water.

A neighbor testified that she had noticed a lot of "loud banging" and "loud noises" coming from the Garrison residence across the street. She looked out from her front porch and observed an older model white pickup truck with an orange stripe coming out of the Garrisons' driveway. She noticed two individuals in the truck and said there may have been a third. There was a safe on the bed of the pickup truck. She could not identify the driver due to the glare on the windshield. However, she positively identified appellant as the passenger from a photographic lineup and at trial.

Police developed Bradley Wood as a suspect. Wood is Garrison's nephew, and he had been to the Garrisons' house before. Wood implicated appellant in the crime. Wood, a felon with an extensive criminal record, had entered into a plea agreement with the Commonwealth. He testified at trial that he had known appellant from prison. Wood thought there would be a large sum of money in the safe. Wood mentioned this to appellant, who responded that "he was in the red on child support and he really needed some money."

Wood and appellant broke into the Garrisons' home and initially tried to cut the safe open with a cutting torch, but failed. They returned with Wood's truck, loaded the safe onto the truck, and drove away with it. They were eventually able to open the safe. Appellant took out the guns and loaded them onto the bed of the truck. They later placed the guns back in the safe and pushed the safe into the water.

When police located the truck and processed it for evidence, it appeared as if its bed had been recently washed. Nevertheless, police found the white insulation from the gun safe that matched what they found in the Garrisons' home, metal shavings, and a cigarette butt containing appellant's DNA.

Officer William Underwood testified concerning his efforts to apprehend appellant. He conducted surveillance on a particular location where appellant was thought to be staying. He

turned to the U.S. Marshal Service for assistance in locating appellant, and ultimately arrested him outside of a motel in Buckingham County. Underwood obtained warrants on March 7, 2012, but appellant was not arrested until October 18, 2012.

A single grand jury indicted appellant on the same date for burglary, grand larceny, and possession of a firearm as a convicted felon. Prior to trial, the defense and the prosecution agreed to sever the firearm charge from the grand larceny and the breaking and entering charges. The case proceeded to trial on the burglary and grand larceny charges, and a jury acquitted appellant of both charges.

When the Commonwealth sought to try appellant on the remaining charge of felon in possession of a firearm, appellant objected. He argued that the collateral estoppel protections embodied in the Double Jeopardy Clause precluded his retrial on the felon in possession of a firearm charge or, in the alternative, barred the Commonwealth from presenting evidence of his involvement in the theft and burglary of the Garrisons' home. The circuit court disagreed. The court also held that the evidence of his involvement in the burglary and larceny was relevant and that its relevance outweighed its prejudicial effect. Following a jury trial, appellant was convicted and sentenced to serve five years in prison. Appellant filed a motion to set aside the jury verdict, again raising the issue of collateral estoppel. The trial court denied the motion.

ANALYSIS

I. THE DOUBLE JEOPARDY CLAUSE DOES NOT BAR A SECOND TRIAL.

Appellant argues that his acquittal in the prior trial means that the jury in that proceeding resolved the factual issues in his favor. Therefore, he contends, he cannot be tried anew on the firearm charge in a separate trial. The Commonwealth responds, among other arguments, that we need not even undertake the collateral estoppel analysis because of the posture of this case. Specifically, the Commonwealth notes that in this instance, all the charges were brought by a

single grand jury, and would have been heard in a single proceeding, but the cases were severed to avoid any undue prejudice to the defendant that would stem from a single trial. In other words, this scenario does not bring into play the concern that lies at the core of the Double Jeopardy Clause: the avoidance of prosecutorial oppression and overreaching through successive trials. We agree with the Commonwealth.

"Whether there has been a double jeopardy violation presents a question of law requiring a de novo review." Fullwood v. Commonwealth, 279 Va. 531, 539, 689 S.E.2d 742, 747 (2010).

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "Although the documentary history of the Double Jeopardy clause is scanty, the available evidence suggests that the draftsmen of the Bill of Rights intended to import into the Constitution the common law protections much as they were described by Blackstone." United States v. Jenkins, 490 F.2d 868, 873 (2d Cir. 1973) (Friendly, J.) (tracing the history of the Clause), aff'd, 420 U.S. 358 (1975).

As a textual matter, the crime of possessing a firearm as a convicted felon is not the "same offense" as burglary or larceny. Therefore, a plain language reading of the clause would lead to the conclusion that appellant could be tried on the firearm charge after acquittal on the other charges. The Supreme Court, however, has interpreted the Double Jeopardy Clause according to the purposes it is designed to serve rather than according to its literal language. Thus, for example, the Supreme Court made clear at an early date that the protections of the clause are not limited to crimes where "life and limb" are at stake. Instead, its protections extend to all criminal offenses. Ex Parte Lange, 85 U.S. (18 Wall.) 163, 173 (1874).

One of the purposes of the clause is to protect final judgments. Crist v. Bretz, 437 U.S. 28, 33 (1978). To this end, the clause "protects against a second prosecution for the same

offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969).  The clause, however, is not "simply res judicata dressed in prison grey."  Notes & Comments, Twice In Jeopardy, 75 Yale L.J. 263, 267 (1965).  Its aim is to prevent "oppressive practices" by the prosecution.  Wade v. Hunter, 336 U.S. 684, 689 (1949).

Appellant invokes the collateral estoppel protection component of the clause.

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice.  It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

Ashe v. Swenson, 397 U.S. 436, 443 (1970).  Preventing prosecutorial abuse and overreaching lies at the root of the constitutionalization of the collateral estoppel doctrine.  Although not part of the original conception of the clause, the Court observed that

> at common law, and under early federal criminal statutes, offense categories were relatively few and distinct.  A single course of criminal conduct was likely to yield but a single offense.  In more recent times, with the advent of specificity in draftsmanship and the extraordinary proliferation of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction.  As the number of statutory offenses multiplied, the potential for *unfair and abusive reprosecutions* became far more pronounced.  The federal courts soon recognized the need *to prevent such abuses* through the doctrine of collateral estoppel . . . .

Id. at 446 n.10 (citations omitted and emphasis added).  The risk of unfair and abusive prosecutions was on full display in Ashe.  The appellant was tried for robbing one of six participants in a poker game and was acquitted.  Id. at 437-39.  The prosecution then turned around and tried appellant for robbing a different participant.  Id. at 439-40.  He was convicted in this second trial.  Id. at 440.  The Court noted with dismay that "the State in its brief has frankly conceded that following the petitioner's acquittal, it treated the first trial as no more than a dry

- 5 -

run for the second prosecution." Id. at 447. The Court concluded that such a practice "is precisely what the constitutional guarantee forbids." Id. Ashe did not involve a situation where a charge was severed from a group of charges brought on the same date by the same grand jury, with one charge being severed for the benefit of the defendant and with his consent.

Every retrial or separate prosecution subjects the defendant to "embarrassment, expense, and ordeal and compel[s] him to live in a continuing state of anxiety and insecurity." Green v. United States, 355 U.S. 184, 187 (1957). The function of the Double Jeopardy Clause, however, is not to bar retrials or separate trials across the board. Rather, it bars a certain "*type of* 'multiple prosecution,'" where "prosecutorial overreaching" is present. Ohio v. Johnson, 467 U.S. 493, 494, 501 (1984) (emphasis added). See also Burks v. United States, 437 U.S. 1, 11 (1978) ("The Double Jeopardy Clause forbids a second trial *for the purpose of* affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."). Thus, for example, the clause does not bar a second trial for a defendant "who has succeeded in getting his first conviction set aside." Pearce, 395 U.S. at 720. Similarly, if the defendant pleads guilty to lesser charges over the objection of the prosecution, the Double Jeopardy Clause does not bar a trial on the more serious charges. Johnson, 467 U.S. at 494. The Court explained that in such a situation, "[t]here simply has been none of the governmental overreaching that double jeopardy is supposed to prevent." Id. at 502. The Supreme Court has refused to allow the defendant "to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." Id.

Appellant's firearm charge was severed by agreement between the defense and the prosecution, pursuant to our decision in Hackney v. Commonwealth, 28 Va. App. 288, 295, 504 S.E.2d 385, 389 (1998). In Hackney, we held that "a trial court must sever a charge of possession of a firearm by a convicted felon from other charges that do not require proof of a prior

- 6 -

conviction." Id. at 295, 504 S.E.2d at 389. The point of separate trials here was to *benefit* the defendant by avoiding the undue prejudice that would occur upon mention of the defendant's felonious past to a jury. See id. at 293, 504 S.E.2d at 388. The purpose of the Bill of Rights as a whole is to protect the citizenry from abusive practices by the government. The specific abuse the Double Jeopardy Clause aims to prevent – including its collateral estoppel facet – is the practice of "unfair and abusive reprosecutions." Ashe, 397 U.S. at 446 n.10. That concern is not present when a trial proceeds on a charge that was severed from a combined original group of charges and the charge was severed with the defendant's consent and for his benefit. Accordingly, we decline to extend Ashe and we conclude that the trial court correctly found that collateral estoppel principles do not apply in this situation.[1]

Finally, Yeager v. United States, 557 U.S. 110 (2009), cited by appellant, does not compel a different outcome. The issue before the Court in that case was whether the prosecution could proceed with a new trial when a jury had acquitted the defendant on some charges but hung on others. Id. at 112. Holding that the counts on which the jury hung played no role in the collateral estoppel analysis, the Court concluded that appellant's retrial was barred by the collateral estoppel aspect of the Double Jeopardy Clause. Id. at 122-23. The Court in Yeager simply did not address the question before us today: whether collateral estoppel forecloses a second trial when the original proceeding was severed for appellant's benefit and with his consent.[2] We decline appellant's invitation to extend the holding in Yeager to these distinct facts.

---

[1] In light of our holding, we need not address the Commonwealth's additional arguments for affirmance.

[2] Courts are divided with regard to whether collateral estoppel can bar a retrial when the defendant has obtained severance of the charges against him and the first trial results in an acquittal. Compare United States v. Blyden, 964 F.2d 1375, 1379 (3d Cir. 1992) (agreeing that "where the defendants' choice and not government oppression caused the successive

- 7 -

II. THE EVIDENCE OF APPELLANT'S INVOLVEMENT IN THE BURGLARY AND LARCENY WAS RELEVANT AND THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN WEIGHING ITS PROBATIVE VALUE AGAINST ITS PREJUDICIAL EFFECT.

Appellant argues that even if the trial could proceed, the trial court abused its discretion in admitting testimony from the Garrisons and testimony from the police about tracking down appellant. He contends that the prejudicial effect of this evidence outweighed its probative value. He argues that the crime of possession of a firearm by a felon is a "victimless crime" and that this evidence served only to inflame the emotion of the jury.

"In order for evidence that the accused has committed other crimes to be admissible, it need only be relevant to prove a material fact or issue, and its relevance must outweigh the prejudice inherent in proving that an accused has committed other crimes." Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 234, aff'd on reh'g en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993). "Such weighing is left to the discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion." Teleguz v. Commonwealth, 273 Va. 458, 482, 643 S.E.2d 708, 723 (2007).

---

prosecutions, the defendants may not assert collateral estoppel as a bar against the government any more than they may plead double jeopardy" (citation and internal quotation marks omitted)), United States v. Ashley Transfer & Storage Co., 858 F.2d 221, 225-27 (4th Cir. 1988) ("Where, as in this case, the defendants' choice and not government oppression caused the successive prosecutions, the defendants may not assert collateral estoppel as a bar against the government any more than they may plead double jeopardy."), and State v. Chenique-Puey, 678 A.2d 694, 698-99 (N.J. 1996) ("A defendant who moves to sever the trial of a charge of contempt of a domestic violence restraining order from the trial of an underlying offense should be precluded from then asserting double jeopardy or collateral estoppel bars to the subsequent prosecution."), with United States v. Aguilar-Aranceta, 957 F.2d 18, 22-23 (1st Cir. 1992) (concluding that the defendant had waived any double jeopardy claim through her consent to a mistrial, but going on to consider whether acquittal on one charge had a collateral estoppel effect on the retrial of the mistried charge), Joya v. United States, 53 A.3d 309, 315-19 (D.C. 2012) (holding that collateral estoppel may bar a retrial even where charges were severed at the defendant's request), Gragg v. State, 429 So. 2d 1204, 1208 (Fla. 1983) (finding that a defendant's severance motion does not waive his right to assert the bar of collateral estoppel), and State v. Butler, 505 N.W.2d 806, 807-10 (Iowa 1993) (applying collateral estoppel to bar a separate trial that the defendant had moved to sever).

The felon in possession of a firearm charge would have made no sense isolated from its context: that appellant, in association with at least one other confederate, stole a safe in the hopes of recovering money, and there were some firearms inside the safe, which appellant briefly possessed. The evidence of the other crimes was thus necessary to explain how appellant came to possess the firearm.

> Where a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence "sanitized" so as to deny the jury knowledge of all but the immediate crime for which he is on trial. The fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses.

Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984). The evidence established that the cigarette butt with appellant's DNA was found in a truck bed that had metal shavings and insulation consistent with what was found in the Garrisons' home.

"Flight by a defendant after the commission of a crime is probative evidence of guilt of that crime." Lovitt v. Commonwealth, 260 Va. 497, 512, 537 S.E.2d 866, 876 (2000). The same is true of evidence that appellant was seeking to avoid contact with law enforcement officers after the commission of the crime. Id. at 513, 537 S.E.2d at 876. The evidence of the extensive efforts needed to track down appellant was, therefore, relevant.

Finally, we find no abuse of discretion by the trial court in finding that the probative value of the evidence outweighed its prejudicial effect.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.