COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Humphreys and Alston
Argued at Lexington, Virginia

UNPUBLISHED

ANGELIQUE TERESA SHELLEY

MEMORANDUM OPINION* BY
v.      Record No. 2019-15-3                JUDGE ROBERT J. HUMPHREYS
DECEMBER 6, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AMHERST COUNTY
Michael T. Garrett, Judge

Robert C. Goad, III (Shrader Law Office, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General; Susan Baumgartner, Assistant Attorney General,
on brief), for appellee.


Angelique Teresa Shelley ("Shelley") appeals her October 13, 2015 convictions in the

Circuit Court of Amherst County (the "circuit court") on three counts of distributing a controlled

substance within 1,000 feet of school property.[1] Shelley's sole assignment of error on appeal is

that the circuit court erred in finding that the location where the drug sale took place was "open

to public use" as required by Code § 18.2-255.2(A)(2).

Whether a location is considered "open to public use" is a factual question. See

Fullwood v. Commonwealth, 279 Va. 531, 537, 689 S.E.2d 742, 746 (2010). "When the

sufficiency of the evidence is challenged, we consider all the evidence, and any reasonable

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Shelley was also convicted on three counts of distribution of a Schedule II controlled
substance, but her assignment of error does not include those convictions in her appeal.

inferences fairly deducible therefrom, in the light most favorable to the party that prevailed at trial, which is the Commonwealth in this case." Byers v. Commonwealth, 37 Va. App. 174, 179, 554 S.E.2d 714, 716 (2001). "When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

Shelley was convicted under Code § 18.2-255.2(A)(2), which states: "It shall be unlawful for any person to . . . sell . . . any controlled substance . . . while . . . [u]pon public property or any property open to public use within 1,000 feet of [school property]." Virginia courts have previously addressed the meaning of the phrase "open to public use" as it is used in this statute. See Fullwood, 279 Va. at 537, 689 S.E.2d at 746; see also Smith v. Commonwealth, 26 Va. App. 620, 626, 496 S.E.2d 117, 119-20 (1998).

In Fullwood, the Supreme Court of Virginia upheld a circuit court's finding that the parking lot of a privately-owned apartment complex was "open to public use." Fullwood, 279 Va. at 537-38, 689 S.E.2d at 746-47. There were multiple "No Trespassing" signs posted around the property, and authorization on file for the police to enforce the no trespassing policy. Id. at 534, 689 S.E.2d at 744-45. The parking lot was considered by police to be an "open air drug market" due to the number of narcotics arrests they had made there. Id. at 534, 689 S.E.2d at 745. There were multiple people "loitering" in the parking lot throughout the day of the drug sale in question. Id. at 537, 689 S.E.2d at 746. Based on those facts, the Supreme Court held that the parking lot was "open to public use" because it was "'readily accessible' to members of the public who were not residents of the complex or whose presence was not authorized." Id. "The fact that people might have been using the lot for illegal purposes [did] not affect the question whether it was 'property open to public use.'" Id. The Court also specifically rejected

the argument that the property was not open to public use due to the "No Trespassing" signs. Id. at 538, 689 S.E.2d at 747. The Court noted that the record had

> not once stated *where* in the apartment complex the signs were posted and, most notably, there is not a shred of evidence in the record even suggesting that a sign was posted at the parking lot. . . . There being no evidence of any posted restriction on accessing the parking lot, much less active enforcement of such a prohibition, members of the public could not have reasonably anticipated being challenged regarding their use of the lot, and thus we conclude that the parking lot was "property open to public use" within the meaning of Code § 18.2-255.2(A)(ii).

Id. at 538, 689 S.E.2d at 747.

Even before the Fullwood decision, this Court held that property "open to public use" can include private property. Smith, 26 Va. App. at 626, 496 S.E.2d at 119 (quoting Code § 18.2-255.2(A)(2)). In Smith, we held that a convenience store was the type of place where children might congregate because the store was "located directly across the street from a high school" and there was "no indication in the record that that location was blocked, closed or in any way inaccessible to the public," and the convenience store was therefore "open to public use." Id. at 626, 496 S.E.2d at 120. This Court further noted that the record "suggest[ed] that the participants to the drug transaction at issue had full access to the property on several occasions with no interruption from the owners of the establishment." Id. Based on these facts, the convenience store was a place "open to public use." Id.

In this case, our judgment is governed entirely by Smith and Fullwood. There was ample evidence to support the circuit court's factual finding that the picnic table was "open to public use." Here, Shelley sold drugs to a confidential informant, Kevin Lockhart ("Lockhart"), at a picnic table sitting on the exterior corner of a motel and approximately 100 yards away from a school. Like the parking lot in Fullwood, which was owned privately and had posted "No Trespassing" signs, the picnic table in this case also appeared to be on private property, as it was

- 3 -

in a grassy area between the motel and a U-Haul dealership. Also, as in Fullwood, there was a "No Trespassing" sign, but it was only posted at the night check-in window. As was the case in Fullwood, where the record lacked evidence that the "No Trespassing" signs were posted in the apartment complex parking lot, this case also lacks any testimony about where the "No Trespassing" sign and night check-in window were located in relation to the picnic table or whether the "No Trespassing" sign was even applicable to the property upon which the picnic table was located. Although there were no people loitering around the picnic table on the day of the drug sale, as there were in Fullwood, it is nevertheless true in this case that members of the public were not expressly prohibited from using the picnic table. Specifically, an investigator testified that he had never seen anyone turned away from using motel property unless they had been previously barred from it. The facts of this case are similar to Fullwood, where the "public could not have reasonably anticipated being challenged regarding their use of" the property. 279 Va. at 538, 689 S.E.2d at 747. Therefore, like the parking lot in Fullwood, the picnic table was "'readily accessible' to members of the public who were not residents of the complex or whose presence was not authorized." Id. at 537, 689 S.E.2d at 746.

Shelley attempts to differentiate this case from Fullwood by emphasizing that both Shelley and Lockhart were renting rooms in the motel at the time of the drug sale, unlike the defendant in Fullwood who was apparently trespassing. Shelley further argues that the "No Trespassing" sign at the night check-in window, and the fact that some people had been removed from the property in the past for trespassing, supports her contention that the picnic table is not accessible to the public, but only to motel residents. However, the record does not establish that the picnic table was on motel property at all. The record simply indicates that the picnic table was located off the back corner of the motel, in a grassy area between the motel and a U-Haul dealership. The picnic table was "right at the edge of the parking lot" of the motel and did not

- 4 -

have a fence or gate surrounding it, and thus could just as well have been on U-Haul property. Furthermore, to agree with Shelley's reasoning would lead to the absurd conclusion that a tenant of a hotel located right next door to a school could sell drugs to children from public areas of the hotel and avoid the heightened penalties imposed by Code § 18.2-255.2.

Even if the picnic table was on motel property, evidence that both Shelley and Lockhart were staying at the motel is not sufficient to show that others *not* renting a room do not use the picnic table on a regular basis. The record here reflects that various people were seen using the picnic table on other occasions, and no one had ever been asked to leave the property unless they had been previously barred from the property. Lockhart could travel easily to and from the picnic table and a nearby parking lot. Law enforcement officers had a clear view of the picnic table from their observation point about forty-five yards away. Therefore, a member of the public would not "reasonably anticipate[] being challenged regarding their use of" the picnic table. Fullwood, 279 Va. at 538, 689 S.E.2d at 747. Thus, regardless of who owned the picnic table, the circumstances show that it would be easy for anyone, resident of the motel or not, to use the picnic table for any purpose, legal or illegal.

Shelley attempts to differentiate Smith from the case at bar by arguing that the picnic table is not an area where school children would normally congregate, in contrast to a convenience store in Smith. In support of this contention, Shelley points out that no children were seen in the picnic table area on the day of the drug sale and that Shelley and Lockhart were alone at the picnic table for each of the transactions. However, an area open to public use is not limited to areas where children actually congregate because the statute prohibits drug sales in *any area* within 1,000 feet of school property, regardless of its actual use by children. See Commonwealth v. Burns, 240 Va. 171, 176, 395 S.E.2d 456, 459 (1990) (noting that the "aggravating factor" of Code § 18.2-255.2 is any "drug transaction occurring within 1,000 feet of

a school," because "such transactions are the cause of harm to children"). Although in Smith we noted that the convenience store was a place where children might congregate, that passing observation did not alter the statutory requirements. Smith, 26 Va. App. at 626, 496 S.E.2d at 119-20. In other words, children need not actually congregate in areas considered to be "open to public use"—the nature of the location and being within 1,000 feet of a school is enough to satisfy the requirements of the statute. See id. at 626, 496 S.E.2d at 119. Here, the picnic table was approximately 100 yards—or 300 feet—from a school. Thus, whether children actually congregated at the picnic table is unimportant to our analysis.

Therefore, because the picnic table was readily accessible to the public and the public would not "reasonably anticipate[] being challenged regarding their use of" the picnic table, Fullwood, 279 Va. at 538, 689 S.E.2d at 747, and because the picnic table was not "blocked, closed or in any way inaccessible to the public," Smith, 26 Va. App. at 626, 496 S.E.2d at 120, we conclude that the circuit court correctly held that the picnic table in this case was "open to public use" pursuant to Code § 18.2-255.2(A)(2).

Affirmed.