COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Beales and Decker
Argued at Salem, Virginia

PUBLISHED

TINA LASHA HALL, A/K/A
  TINA LASHA WALLER

                                                          OPINION BY
v.       Record No. 1751-17-3            JUDGE RANDOLPH A. BEALES
                                                       NOVEMBER 6, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Matthew L. Pack (M. Pack Law, PLLC, on brief), for appellant.

Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following the execution of a search warrant, Tina Lasha Hall, a/k/a Tina Lasha Waller

("appellant") was indicted for four felonies, including possession of a firearm by a convicted

felon and possession of a firearm while possessing cocaine with the intent to distribute.

Appellant moved to sever the charge for possession of a firearm by a felon from the other

charges in the indictment.  After she prevailed on a motion to strike at the first trial on the other

charges, she moved to dismiss the charge of possession of a firearm by a convicted felon,

arguing that it violated the principle of collateral estoppel and double jeopardy.  The trial court

denied appellant's motion, and she was ultimately convicted.  On appeal, appellant contends the

trial court erred in denying her motion to dismiss based on "collateral estoppel pursuant to the

Double Jeopardy Clause of the Fifth Amendment"[1] and in finding the evidence sufficient to find her guilty of possession of a firearm by a convicted felon.

I. BACKGROUND

Relevant Procedural History

On February 16, 2016, appellant was indicted for possession of cocaine with intent to distribute, third or subsequent offense; possession of marijuana with intent to distribute; possession of a firearm while possessing cocaine with intent to distribute; and possession of a firearm after having been convicted of a felony. On May 5, 2016, appellant moved to sever the charge of possession of a firearm by a convicted felon from the other charges, and the trial court granted the motion. On January 18, 2017, appellant was tried for the other charges.[2] At the conclusion of the Commonwealth's case-in-chief, the trial court granted appellant's motion to strike the charges.

On January 23, 2017, appellant filed a motion to dismiss the charge of possession of a firearm by a convicted felon based on collateral estoppel and double jeopardy. The trial court denied the motion to dismiss and proceeded to trial. At a bench trial on August 10, 2017, the trial court found appellant guilty of possession of a firearm by a convicted felon. She was sentenced to four years of incarceration with two years suspended and 18 months of supervised probation.

---

[1] Appellant does not argue that her trial for possession of a firearm by a convicted felon also violated the similar double jeopardy prohibition in Article I, Section 8 of the Virginia Constitution.

[2] On July 11, 2016, the Commonwealth moved to *nolle prosequi* the charge of possession of marijuana with the intent to distribute.

<u>Evidence Presented at Appellant's Trial for Possession of a Firearm by a Convicted Felon</u>

On the morning of October 30, 2015, at approximately 8:30 a.m., police officers from the Pittsylvania County Sheriff's Office executed a search warrant on the residence of Ronnie Stone at 1105 Cody Road in Pittsylvania County.

Earlier that morning, approximately an hour before the search warrant was executed, Investigator Robert Worsham with the Pittsylvania County Sheriff's Office conducted surveillance of the address. From his location in the woods, he witnessed one person – appellant – leave the residence and get into a vehicle. Approximately one week prior to the execution of the search warrant, another officer, Corporal James Davis, knocked on the door of the residence. Appellant answered and, when Corporal Davis inquired about possibly purchasing a vehicle outside of the residence, appellant told him that he would have to wait for Stone to return home.

During the execution of the search warrant on October 30th, in one of the bedrooms of the residence, the officers located an AK-47 between the bed and the nightstand. They found live ammunition in the firearm and another ammunition magazine in the drawer of the nightstand. Appellant's and Stone's young child was lying in that bed when the police arrived.

On a dresser in the bedroom, the officers located a tin decorated with sunflowers. The child's insurance card was found on top of the tin and five one-hundred-dollar bills were found inside. The officers found a bottle of medicine bearing the child's name on the dresser. They also located two prescription bottles from CVS prescribed to appellant in that same bedroom.

Underneath the bed, the officers found an empty box for a firearm.[3] They also located two pieces of mail addressed to appellant. The address on one of the pieces of mail was on Thompson Store Road in Vernon Hill, Virginia. In a shoe box under the bed, the officers found

---

[3] At trial, Corporal Davis testified that he did not know if the box was the box for the firearm that the officers located between the bed and the nightstand.

certificates of title for four vehicles – each naming appellant as the vehicle's owner. The address listed for appellant on the certificates was on Marysville Road in Altavista, Virginia.

The police seized fifteen vehicles at the residence. In one of the vehicles at the residence, a Honda Odyssey, the police found a repair bill for the vehicle bearing appellant's name. Appellant's address on the bill was listed as 1105 Cody Road – the address of the residence being searched. Lieutenant Gerald Ford ran a Q-VIN[4] for appellant and found that she had several vehicles registered in her name. For every vehicle listed on the report, appellant's address was also listed as 1105 Cody Road. At appellant's trial, the Commonwealth introduced the answer appellant submitted in a forfeiture proceeding on the seized vehicles. In that document, appellant claimed ownership of seven of the vehicles seized at the residence.

After the warrant was executed, the police directed Stone to call appellant, and Investigator Colbert asked her to return to the residence. When she arrived, she was interviewed by Major Nicholson. Major Nicholson testified that he asked appellant about the firearm and that she told him Stone's father had given the gun to Stone for his protection approximately two months earlier. Major Nicholson also testified that appellant admitted to him that she was a convicted felon. A copy of appellant's prior convictions was entered into evidence without objection.

After the Commonwealth rested, appellant's cousin, Keisha Waller, testified that appellant lived with appellant's mother at the Thompson Store Road address and that she had never seen appellant with a firearm.

Appellant testified in her own defense. She claimed that she was at Stone's residence at about 6:00 a.m. that morning to drop off their child. She did not deny "using that address" but

---

[4] Lieutenant Ford testified that a "Q-VIN essentially runs a person's information to see what vehicles are registered in that person's name."

- 4 -

claimed that she did not reside there. She testified that Stone's father had bought a gun about two months prior, but she denied saying anything to Major Nicholson about Stone's father giving it to Stone. She also denied knowing that there was a firearm in the residence. Appellant testified that the mail and other documents belonging to her were probably in the residence as a result of her "just like randomly leaving, leaving things there . . . ." She further testified that she did not know how the certificates of title to her vehicles got under the bed at Stone's residence, and she denied that she was taking the medication found in the bedroom at that time.

At the conclusion of the trial, the trial court found appellant guilty of possession of a firearm by a convicted felon.

## II. ANALYSIS

### A. Collateral Estoppel

Although appellant moved to have the charges against her severed, appellant contends that her conviction for possession of a firearm by a convicted felon violates the collateral estoppel principle encompassed in the Fifth Amendment's guarantee against double jeopardy. Specifically, she argues that because she prevailed on her motion to strike on the charge of possession of a firearm while possessing cocaine with the intent to distribute at the first trial, the issue of whether she possessed the firearm had already been litigated, and collateral estoppel principles should have precluded the Commonwealth from proceeding with the trial on possession of a firearm by a convicted felon.

"Whether there has been a double jeopardy violation presents a question of law requiring a *de novo* review." Fullwood v. Commonwealth, 279 Va. 531, 539, 689 S.E.2d 742, 747 (2010). The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice

- 5 -

system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek." Currier v. Virginia, 138 S. Ct. 2144, 2149 (2018). However, "the Clause was not written or originally understood to pose 'an insuperable obstacle to the administration of justice' in cases where 'there is no semblance of [these] type[s] of oppressive practices.'" Id. (quoting Wade v. Hunter, 336 U.S. 684, 688-89 (1949)). Collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy." Ashe v. Swenson, 397 U.S. 436, 445 (1970). "It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443. "Collateral estoppel, as applied in criminal proceedings, becomes applicable only when the defendant's prior acquittal necessarily resolved a factual issue that the Commonwealth seeks to litigate again in a subsequent proceeding." Commonwealth v. Leonard, 294 Va. 233, 239, 805 S.E.2d 245, 249 (2017).

In Currier, 138 S. Ct. 2144, the United States Supreme Court was presented with an issue virtually identical to the one in the case at bar. In that case, in order to prevent the introduction of evidence of his prior convictions, defendant Michael Currier and the Commonwealth agreed that the trial court should sever the charges of burglary and larceny from his charge of possession of a firearm by a convicted felon. Id. at 2148. The trial court granted the request, and Currier was acquitted by a jury on the burglary and larceny charges. Id. Before the second trial on the firearm charge, Currier argued that the collateral estoppel component of double jeopardy should prohibit the government from trying him on the charge of possession of a firearm by a convicted felon. Id. at 2149. The trial court rejected the arguments, and Currier was ultimately convicted on the firearm charge. Id. Appellant appealed his conviction, which was affirmed by this Court and then also affirmed by the Virginia Supreme Court. Currier v. Commonwealth, 65 Va. App. 605, 779 S.E.2d 834 (2015), aff'd, 292 Va. 737, 798 S.E.2d 164 (2016).

- 6 -

The United States Supreme Court also affirmed the conviction, holding that no collateral estoppel violation existed because Currier had agreed to have two separate trials on the charges against him. The Supreme Court reasoned that, in cases where the defendant agrees to two trials to avoid the introduction of prejudicial but probative evidence, "the defendant wins a potential benefit and experiences none of the prosecutorial 'oppression' the Double Jeopardy Clause exists to prevent." Currier, 138 S. Ct. at 2151. Therefore, "a defendant's consent dispels any specter of double jeopardy abuse that holding two trials might otherwise present." Id. See also Campbell v. Commonwealth, 69 Va. App. 217, 230, 817 S.E.2d 663, 669-70 (2018) (holding defendant's trial on the charge of possession with the intent to distribute – after being found guilty of manufacturing at an earlier trial – was not barred by constitutional double jeopardy principles where the defendant had requested a continuance on that charge).

In the case before us, appellant requested that the charges be severed to prevent the Commonwealth from introducing evidence of her prior convictions at her trial for possessing a firearm while possessing cocaine with the intent to distribute. Because appellant agreed to the severance, we do not need to further analyze whether the appellant's trial for possession of a firearm by a convicted felon would have required the parties to relitigate an issue of ultimate fact decided in the first trial. The "'Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of [a] voluntary choice' like that." Currier, 138 S. Ct. at 2151 (quoting United States v. Scott, 437 U.S. 82, 99 (1978)). Therefore, given the Supreme Court's decision in Currier, appellant's conviction at the second trial for possession of a firearm by a convicted felon certainly did not offend the Double Jeopardy Clause.

Appellant contends that we should distinguish this case from Currier because, unlike the defendant in Currier, who was acquitted by a jury in his first trial, appellant's first trial ended

when she prevailed on a motion to strike. Thus, according to appellant, "the evidence was even less sufficient in the first case for [appellant] than it was in the first case in Currier." We disagree with appellant that this difference renders Currier inapplicable. Regardless of the manner by which appellant prevailed at the first trial, appellant's agreement to the two trials removed any concerns of any possible prosecutorial overreaching or governmental oppression that would be central to a challenge under the Double Jeopardy Clause. Therefore, the trial court did not err in denying appellant's motion to dismiss.[5]

### B. Sufficiency of the Evidence for Appellant's Conviction

Appellant also contends that the evidence was insufficient to prove that she possessed the firearm found in the bedroom. When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact

---

[5] Appellant also argues that the trial court erred for failing to take "into account the whole case including evidence, pleadings, and arguments" in determining whether collateral estoppel applied to preclude the Commonwealth from prosecuting her in the second trial. Appellant argues that the trial court only listened to her counsel's argument on the motion to strike in the first trial, instead of reviewing the record from the entire proceeding. However, the trial court did not need to undertake a collateral estoppel analysis to determine the issues litigated in the first trial because appellant's request to have the charges in the indictment severed precluded her from arguing a double jeopardy violation. Therefore, we find no error.

- 8 -

fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Possession of a firearm may be actual or constructive. "Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control.'" Logan v. Commonwealth, 19 Va. App. 437, 444, 452 S.E.2d 364, 368-69 (1994) (*en banc*) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1989)).

The circumstantial evidence presented at trial showed that, although appellant denied living in the residence, she was a regular occupant of the home. "A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." Wright v. Commonwealth, 53 Va. App. 266, 274, 670 S.E.2d 772, 775-76 (2009). Appellant was at the residence by herself a week prior to the search warrant's execution when Corporal Davis stopped by to inquire about a vehicle. Investigator Worsham also saw her there in the early morning – at around 7:30 a.m. – on the day the search warrant was executed. Furthermore, appellant kept possessions – including the seven vehicles that she claimed were hers in the forfeiture action – at the residence. She did not deny "using that address," and she apparently reported it as her address to DMV and to an automobile repair shop because the documents from both DMV and the repair shop showed it as her address.

Substantial evidence also suggested that appellant was an occupant of the bedroom where the firearm was found in plain view. Appellant's child was found in the bed, and his medications were found on the dresser in that bedroom approximately an hour after appellant was seen

- 9 -

leaving the residence. The logical inference from this fact is that appellant was in the room with her child that morning and she, therefore, would have had access to the gun just before she left that morning. Medication prescribed to appellant was found in that bedroom, and her mail was found under the bed. The police also recovered certificates of title to vehicles owned by appellant in a shoebox under the bed. The certificates were not haphazardly lying on the floor under the bed; they had been placed in a shoebox, suggesting that appellant purposely filed and stored them there.

In addition to the evidence connecting appellant to the room where the firearm was located in plain view, the trial court concluded that appellant was aware of the presence and character of the gun in the residence because of her statements to Major Nicholson. Appellant told Nicholson that the gun the officers recovered belonged to Stone – and that Stone's father had given it to him two months earlier.[6] Although at trial appellant denied making these statements to Major Nicholson and denied knowing that the firearm was in the residence or that it belonged to Stone, the trial judge was permitted to reject her testimony and accept that of Nicholson. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."). Based on the totality of the circumstances, we certainly cannot say that no rational factfinder could have convicted appellant of possession of a firearm by a convicted felon.

---

[6] Stone's ownership and possession of the firearm would not preclude appellant from also possessing the firearm. See Smallwood v. Commonwealth, 278 Va. 625, 631, 688 S.E.2d 154, 157 (2009) ("Possession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." (quoting Burnette v. Commonwealth, 194 Va. 785, 792, 75 S.E.2d 482, 487 (1953))).

### III. CONCLUSION

In short, the trial court did not err in denying appellant's motion to dismiss the indictment for possession of a firearm by a convicted felon because appellant agreed to have the charges against her severed. Appellant's voluntary decision to request that the charges be severed benefited appellant because it kept the Commonwealth from introducing evidence of earlier felony convictions in the first trial. Since the severance was at her election, as the United States Supreme Court held in Currier v. Virginia, she was not subject to any prosecutorial overreaching or abuse that the Double Jeopardy Clause was intended to prevent. Therefore, the trial court did not err in refusing to dismiss the indictment for possession of a firearm by a convicted felon.

In addition, the evidence was sufficient for a rational factfinder to convict appellant of possession of a firearm by a convicted felon. Although appellant claimed not to live at the residence where the firearm was found, she kept multiple vehicles at the address, she reported the address to the DMV, and she was alone at the residence a week before the search warrant was executed – and was also there very early in the morning on the day it was executed. Appellant also kept numerous personal items in the bedroom where the firearm was found in plain view, including mail, medication, and numerous vehicle certificates of title organized in a shoebox under the bed. Her small child was also found in that bed that was next to the firearm – shortly after she left the residence that morning. Given all of these circumstances, we certainly cannot say that no rational factfinder could have found appellant guilty of possession of a firearm by a convicted felon.

For all of these reasons, we affirm appellant's conviction for possession of a firearm after having been convicted of a felony.

Affirmed.