COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Athey

BRIAN ANTHONY JOE

v.      Record No. 0966-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
APRIL 4, 2023

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Bruce Strickland, Judge

(Samantha Offutt Thames, Senior Appellate Attorney; Virginia
Indigent Defense Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Lindsay M. Brooker, Assistant
Attorney General, on brief), for appellee.

Following a sentencing hearing, the Circuit Court of Stafford County ("trial court")

sentenced Brian Anthony Joe ("Joe") to 52 years and 84 months of incarceration, with 40 years

suspended. On appeal, Joe argues that the trial court erred by considering irrelevant and prejudicial

evidence at his sentencing. He also contends the trial court abused its discretion in determining the

length of his sentence. After examining the briefs and record in this case, the panel unanimously

holds that oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). For the following reasons, we affirm the trial court's judgment.

I. BACKGROUND

The facts underlying Joe's convictions are undisputed. At a gym in Stafford County, on

January 30, 2021, Joe fell through the ceiling of the women's locker room onto a gym patron who

was changing her clothes. Joe was "dangling from a harness system" and "struggling" to extricate

_____
[*] This opinion is not designated for publication. *See* Code § 17.1-413.

himself.[1]  After unsuccessfully attempting to climb back into the ceiling, Joe severed the harness system with a knife, landed on the floor, and retreated to the men's locker room.  A short time later, Joe attempted to leave the premises, but patrons of the gym stopped him while a gym employee advised the police by phone.  Next, Joe locked himself inside a unisex bathroom before quickly returning to the adjacent men's locker room.[2]  Law enforcement ultimately found Joe in the men's locker room, whereupon they took him into custody.

In the interim, the manager of the gym noticed that the unisex bathroom near the women's locker room was locked and upon unlocking the bathroom door, he discovered a "rope ladder system" that was "secured to the toilet with straps and tape" which "accessed the ceiling area of the gym."  Upon searching the ceiling area, law enforcement discovered "an elaborate system of straps, hooks, binders, [and] clips" throughout the ceiling above the women's locker room.  In addition, the ductwork above the women's locker room had been "removed" or "altered," and a peephole "big enough to put a small camera" through had been cut out above the women's shower area.

Officers also discovered Joe's gym bag inside the bathroom, which contained straps, zip ties, "specialized duct tape that can withstand seven hundred pounds of force," and personal lubricant.  They also found Joe's wallet in the gym bag which contained his identification, and "a plastic bag with white powder" which was later determined to be methamphetamine.  In addition, the officers found a two-and-a-half-inch-long camera behind the bathroom door.  Although the camera was capable of storing images, no storage card was found in the camera; however, when Joe was searched, they discovered a cell phone "concealed in his crotch area" that connected to the camera through a software application.

_____

[1] At least "two dozen females" were inside the women's locker room when Joe fell.

[2] Law enforcement later discovered that ceiling tiles in the unisex bathroom had been removed and that there were signs someone had tried "to access that ceiling area."

- 2 -

Next, with the cooperation of law enforcement in Prince William County, the Stafford County Sheriff's Office obtained and then executed a warrant to search Joe's residence and motor vehicle, both of which were located in Prince William County. During the search of Joe's home and automobile, they discovered additional straps and binders like those which were found in the ceiling area of the gym as well as a second cell phone which contained "about a dozen . . . up-skirt videos," where a camera had been "on [the person's] shoe" configured to record underneath women's dresses. The cell phone they recovered also contained "over 700 images" of child pornography.

Joe was subsequently indicted by a grand jury on two counts of statutory burglary, seven counts of peeping in violation of Code § 18.2-130, and one count each of attempted unlawful filming of a minor, destruction of property, and possession of a controlled substance.[3] Joe entered a plea of guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to each charge except for possessing a controlled substance, to which he pled no contest. Following an extensive and thorough colloquy, the trial court accepted Joe's *Alford* pleas of guilty, convicted him on each charge, ordered a presentence investigation report, and continued the cases for a sentencing hearing.

During the sentencing hearing, the trial court heard testimony from two officers, including the detective who discovered that the phone found in Joe's crotch area had been paired to the camera found behind the gym's bathroom door. Additional testimony was heard from one of the women who had been in the locker room when Joe fell through the ceiling and a representative of the gym. The Commonwealth also sought to have the trial court view several images and a video of child pornography, along with "some snippets" of the up-skirt videos taken from the phone

---

[3] The Commonwealth charged Joe with an additional three counts of statutory burglary, six counts of production of child pornography, five counts of attempted unlawful filming of a minor, one count of destruction of property, and eight counts of peeping in violation of Code § 18.2-130 but nolle prosequied these charges in exchange for his *Alford* guilty pleas.

recovered at Joe's Prince William County home.[4]  Joe objected to the trial court viewing the videos as irrelevant, "associated with an unadjudicated case" in Prince William County, and that the "specific viewing of [the video of child pornography]" was "redundant."  The Commonwealth contended that the videos were offered to rebut Joe's claim in the presentence investigation report that he "would never intentionally harm another person or target a child."  The trial court overruled Joe's objection, finding that the video images were "relevant to the charges of attempted peeping."  Whereupon, the trial court viewed the videos, noting that it would "weigh the evidence" and "consider [it] for what it is."[5]  The trial court, however, did refrain from viewing the entire 700 video images of child pornography, noting that it "saw enough in the first forty seconds."

During the sentencing argument, Joe highlighted his lack of a previous criminal record, his candor in the presentence investigation report, and the letters of support from his friends and family. He further contended that there was "no indication" that he recorded anything with the camera found in the gym bathroom and that there was no evidence that he had "a predatory nature towards children."  Finally, he explained his actions were the result of his addiction to methamphetamine and fentanyl and requested the trial court sentence him "towards the [discretionary sentencing] guidelines," which recommended a period of incarceration between one day and six months. During allocution, Joe apologized to the women in the locker room on the day he fell from the ceiling, asked for their forgiveness, and stated that he did not "care about [his] sentence," before claiming that he did not "videotape it" and that there was "no excuse for what [he] did."

At the conclusion of the sentencing argument, the trial court recessed to "reflect on" the evidence and the arguments of counsel before pronouncing its sentence.  Following the recess, the

---

[4] The video of child pornography consisted of "multiple images of child pornography in video format."

[5] The Commonwealth did not move to admit the videos or images into evidence, and they are not part of the record on appeal.

trial court stated that it had "reviewed and considered all of the evidence and argument presented, as well as [Joe's] allocution," and "reviewed and considered the presentence report and the sentencing guidelines." The trial court then found that Joe had "violated the sanctity in essence of human respect and decency," that his crimes caused "significant" and "permanent injury to many," and that his crimes "were despicable" and the product of a "methodically planned . . . elaborate scheme." The trial court then sentenced Joe to a total of 52 years and 84 months of incarceration based on the convictions arising from his guilty pleas with 40 of those years suspended, leaving him with an active sentence of 12 years and 84 months.

## II. ANALYSIS

### A. Standard of Review

"In determining the admissibility of evidence at a sentencing hearing, 'the circumstances of the individual case will dictate what evidence will be necessary and relevant, and from what sources it may be drawn.'" *Meekins v. Commonwealth*, 72 Va. App. 61, 68 (2020) (quoting *Beck v. Commonwealth*, 253 Va. 373, 384 (1997)). "Such weighing is left to the discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion." *Id.* (quoting *Harvey v. Commonwealth*, 65 Va. App. 280, 287 (2015)).

We review a trial court's criminal sentencing decision for an abuse of discretion. *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "A Virginia trial court 'clearly' acts within the scope of its sentencing authority 'when it chooses a point within the permitted statutory range' at which to fix punishment." *Id.* at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

*B. The trial court did not err in considering the images of child pornography, video excerpts of child pornography, and "upskirt" videos at Joe's sentencing hearing.*

1. <u>The contested evidence was relevant at the sentencing hearing.</u>

As Joe properly concedes, a sentencing judge may consider "evidence of unadjudicated criminal activity." *Moses v. Commonwealth*, 27 Va. App. 293, 302 (1998) (quoting *Thomas v. Commonwealth*, 18 Va. App. 656, 659 (1994) (en banc)). Joe conceded in the trial court below that the disputed images and videos were "evidence of unadjudicated criminal activity." On appeal, he nevertheless contends that the trial court erred by viewing the very evidence he previously acknowledged that the trial court was entitled to consider during his sentencing hearing. He justifies this inconsistency by arguing that the *existence* of the images and videos may have been relevant to the trial court's sentencing determination, but that it was unnecessary for the trial court to view the images themselves. As Joe frames the issue, he had no objection to the trial court knowing of the unadjudicated criminal conduct, he simply did not want the trial court to see the evidence of that unadjudicated conduct. He claims that viewing the disputed evidence was unnecessary because doing so was not needed to "decide any fact-finding questions surrounding the images." We disagree.

"A sentencing hearing before a judge is not a criminal trial." *Smith v. Commonwealth*, 52 Va. App. 26, 30 (2008). Under settled jurisprudence, the sentencing judge has "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Harvey*, 65 Va. App. at 284 (quoting *McClain v. Commonwealth*, 189 Va. 847, 860 (1949)). In exercising its discretion, the trial court "must take into account a wide range of information, including the defendant's remorse or lack thereof, in determining 'a sentence that best effectuates the criminal justice system's goals of deterrence (general and specific), incapacitation, retribution and rehabilitation.'" *Baldwin v.*

*Commonwealth*, 69 Va. App. 75, 87-88 (2018) (quoting *Smith v. Commonwealth*, 27 Va. App. 357, 363 (1998)).

We disagree with Joe's relevance argument because the trial court was "entitled to [consider] all of the relevant and connected facts" when determining an appropriate sentence. *Id.* at 84 (quoting *Currier v. Commonwealth*, 65 Va. App. 605, 615 (2015)). Additionally, the disputed evidence rebutted Joe's claim made in the presentence investigation report that he "would never intentionally harm another person or target a child," and was probative of his character and amenability to rehabilitation. *See id.* at 87.

Moreover, Joe is not permitted to limit the Commonwealth's opportunity to present relevant evidence by stipulating to the criminal activity. *See Boone v. Commonwealth*, 285 Va. 597, 600 (2013) ("[A]n accused cannot . . . require the Commonwealth to pick and choose among its proofs, to elect which to present and which to forego." (quoting *Pittman v. Commonwealth*, 17 Va. App. 33, 35 (1993))); *see also Pittman*, 17 Va. App. at 35 ("The Commonwealth . . . is not obliged to enter into an agreement whereby it is precluded from putting on its evidence simply because the defendant is willing to make a qualified stipulation." (quoting *Hudson v. Commonwealth*, 9 Va. App. 110, 112 (1989))). Considered in the context of this case, we find no abuse of the trial court's discretion in viewing the video evidence of unadjudicated crimes here.

2. <u>The probative value of the evidence was not outweighed by its prejudicial effect.</u>

Joe further argues that, even if relevant, the probative value of the evidence was outweighed by its prejudicial effect. We disagree.

"Relevant evidence may be excluded if 'the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting Va. R. Evid. 2:403(a)(i)). "The fact that evidence is highly prejudicial to a party's claim or defense, in and of itself, 'is not a proper consideration in applying the balancing test.'" *Id.*

(quoting *Lee v. Spoden*, 290 Va. 235, 252 (2015)). Rather, "the nature of the evidence must be such that it generates such a strong *emotional* response that it is unlikely that the jury could make a *rational* evaluation of its proper evidentiary weight." *Id.* at 673.

We note that the challenged evidence here was not presented to a jury in the guilt phase of the proceedings, but only to the trial court at sentencing. *See Baldwin*, 69 Va. App. at 88 ("A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." (quoting *Eckhart v. Commonwealth*, 222 Va. 213, 216 (1981))). Moreover, we have already determined that the challenged evidence was probative, material, and relevant to the trial court's duty to determine "a sentence that best effectuates the criminal justice system's goals of deterrence (general and specific), incapacitation, retribution and rehabilitation." *Id.* at 87-88 (quoting *Smith*, 27 Va. App. at 363). Furthermore, the record does not show that the trial court based its sentencing decision upon a "strong *emotional* response" to the challenged evidence. *Fields*, 73 Va. App. at 673. Rather, the record reflects that the trial court carefully considered all the evidence and argument before sentencing Joe. Indeed, the trial court expressly stated that it viewed only portions of the challenged evidence; thus, the record shows that the trial court did not consider cumulative or unnecessary evidence. Upon review, and in the context of the offenses for which Joe was being sentenced including the evidence he presented in mitigation, we find no abuse of the trial court's discretion.

### C. *The trial court did not err in determining the length of Joe's sentence.*

Joe contends that, although the trial court indicated it "considered all of the evidence," it did not appropriately weigh his mitigation evidence before sentencing him to 12 years and 84 months of active incarceration. He claims that it is "clear" from the trial court's ruling that it "made an error in

judgment." In support of this claim Joe notes that "the facts of this case ultimately point to a non-violent crime" and that the sentence constitutes a "huge deviation" from the discretionary sentencing guidelines. He further argues that the trial court did not consider his personal impact statement or that he "has suffered from various forms of addiction for most of his life." We disagree.

The sentencing guidelines are "discretionary, rather than mandatory." *Fazili v. Commonwealth*, 71 Va. App. 239, 248 (2019) (quoting *West v. Dir. of Dep't of Corr.*, 273 Va. 56, 65 (2007)). They are "merely procedural tools to assist and guide a judge in the exercise of the judge's sentencing discretion." *Luttrell v. Commonwealth*, 42 Va. App. 461, 468 (2004). "Accordingly, a circuit court's failure to follow the guidelines is 'not . . . reviewable on appeal." *Fazili*, 71 Va. App. at 248 (quoting Code § 19.2-298.01(F)). Indeed, the task of sentencing "rest[s] heavily on judges closest to the facts of the case," because they are best situated to determine "where the equities lie." *Minh Duy Du*, 292 Va. at 563-64.

The record demonstrates that the trial court considered "all of the evidence and argument presented" when crafting its sentence. In fact, the trial court expressly stated that its goal was to "fashion a sentence" that was "fair and just, considering Joe as a person, the conduct that he has been convicted of, and the impact that" conduct had on the victims. Notwithstanding the mitigating evidence presented, the trial court found that Joe had "violated" the boundaries of "human respect and decency" and that his crimes caused "significant" and "permanent injury to many." Finding Joe's "methodically planned" crimes "despicable," the trial court clearly concluded that the circumstances in aggravation outweighed Joe's mitigating evidence. The trial court imposed a sentence "within the statutory range, and our task is complete." *Thomason*, 69 Va. App. at 99; *see also* Code §§ 18.2-10, -11, -26, -91, -130(A), -137, -250, -386.1.

### III. Conclusion

The trial court permissibly considered the evidence of Joe's unadjudicated bad acts and fashioned a sentence consistent with the sentencing ranges as determined by the General Assembly. Accordingly, we affirm the trial court's judgment.

*Affirmed.*