COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker and Judges Beales and Russell*

BRANDON LAMONT WINSTON

MEMORANDUM OPINION**

v.     Record No. 1129-21-2

PER CURIAM
JULY 5, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

(Kyle Anderson, on brief), for appellant.

(Jason S. Miyares, Attorney General; Tanner M. Russo, Assistant
Attorney General, on brief), for appellee.

Following a bench trial, the Circuit Court of Chesterfield County convicted appellant

Brandon Lamont Winston of strangulation, in violation of Code § 18.2-51.6, and sentenced him to

five years of incarceration with two years and six months suspended.[1] Winston appeals the

conviction, arguing that "[t]he trial court erred when finding the evidence was sufficient to convict

[him] of strangulation of another when the [trial c]ourt failed to find reasonable doubt after

weighing testimony from all witnesses." In addition, he argues that the trial court "abused its

d[i]scretion when it sentenced the defendant to two years and six months incarceration after

---

* Justice Russell participated in the decision of this case prior to his investiture as a Justice of the Supreme Court of Virginia.

** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Winston was also charged with rape, abduction, forcible sodomy, assault and battery of a family member, and use of a firearm in the commission of a felony. Before trial, the trial court granted the Commonwealth's motion to *nolle prosequi* the abduction charge and the assault and battery of a family member charge. The trial court granted Winston's motion to strike as to the use of a firearm in the commission of a felony charge. At trial, the trial court found Winston not guilty of rape and not guilty of forcible sodomy.

convicting him of strangulat[i]on of another when there was mitigation to support a sentence within the guid[e]lines." After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the decision of the trial court.

## I. BACKGROUND

"On appeal, an appellate court is required to consider the evidence and all inferences fairly deducible from it in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020). Therefore, we discard appellant's evidence that conflicts with that of the Commonwealth, and "regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018) (quoting *Kelley v Commonwealth*, 289 Va. 463, 467-68 (2015)).

On July 18, 2020, Winston and the victim[2] were in a relationship and had a daughter in common. Winston, his girlfriend, and their daughter lived in Chesterfield County along with his girlfriend's son. According to the victim's testimony at trial, in the early hours of that morning, while she was showering, Winston entered the bathroom and confronted her about a Facebook post. Winston accused her of lying, directed profanities at her, and then began choking her. The encounter left her with bruises and scratches on her neck and bruises on her leg.

Winston exited the bathroom and returned with a gun. He removed his clothes and entered the shower with her. He put the gun to her head, threatened to kill her and her children, and threatened to rape her. According to the victim's testimony, he choked her while they were in the

---

[2] We refer to her as "the victim" or "girlfriend" throughout this opinion in an attempt to better protect her privacy.

shower. As a result of the choking, she was unable to scream and, at times, was even unable to speak.

Later, Winston choked the victim in the shower again. He then brought her back to the bedroom, pushed her against the blinds, and continued to choke her in front of their daughter. While Winston put their daughter back in her crib, the victim found her son and tried to leave the apartment. Winston, however, stopped her at the front door and proceeded to choke her yet again. Eventually, she was able to flee the apartment, dressed only in a towel. She went to a neighbor's residence and called the police.

Officers Robertson and Barndt responded to the scene. The victim told Officer Robertson that "her boyfriend had strangled her and held her against her will and assaulted her, pointed a gun at her head and put a knife to her throat and raped her." Officer Robertson observed scratches and red marks on her neck.

Winston told the officers that his argument with his girlfriend arose because another man liked one of her Facebook posts and he thought she was cheating on him. He told the officers that, after the argument, they reconciled and had consensual sex. Winston stated that when they woke up, the argument resumed.

Officer Barndt executed a search warrant of the apartment. He found a Glock 45 handgun in a closet, which appeared wet. The police advised Winston of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and placed him under arrest.

Ashley Balcombe, an expert in forensic nursing, testified that she conducted a forensic examination and a sexual assault examination of the victim on the day of the incident. Balcombe observed and photographed her injuries. Balcombe measured the circumference of the victim's neck to determine if it was swollen. During the initial examination, her neck was thirty-three and

one-half centimeters. Later, during a follow-up examination, her neck was only twenty-nine centimeters in circumference.

At the conclusion of the Commonwealth's evidence, Winston moved to strike, which the trial court denied as to all charges except for the use of the firearm in the commission of a felony charge. Winston called Lamont Freeman Coley, who testified that he was in the residence with Winston and the victim on the night of the incident and did not observe or hear any argument. On cross examination, Coley stated that he was not in the room with them for the entire evening. Winston also took the stand and denied the events as described by the victim. He testified that they broke up on the night in question but had consensual sex. On cross examination, Winston stated that he was not concerned when his girlfriend left the apartment in a towel. At the conclusion of Winston's evidence, the trial court denied his renewed motion to strike. The trial court found Winston guilty of strangulation.

At the sentencing hearing, the victim's sister testified that the incident traumatized the victim and the victim's children. She stated that her sister and her sister's children were now always scared, and that her sister had trouble sleeping after the incident.

Winston's mother testified that Winston "helps his family in any way possible, whether it's financial or emotional." She discussed Winston's employment history, including his dedication as an assistant manager. Winston's grandmother testified that he was intelligent, dedicated, compassionate, and a good father to his children.

Winston requested that the trial court impose nine months of incarceration, which was the midpoint suggested by the discretionary sentencing guidelines, in light of his dedication to his employment and the lack of any prior violent felonies.[3] The Commonwealth emphasized the

---

[3] The discretionary sentencing guidelines recommended a sentence between seven months and one year and four months of incarceration, with a midpoint of nine months.

violent facts presented at trial. The trial court sentenced Winston to five years of incarceration, with two years and six months suspended. This appeal followed.

## II. ANALYSIS

### A. Assignment of Error Related to Sufficiency

Winston argues that the evidence was insufficient to convict him of strangulation "when the court failed to find reasonable doubt after weighing testimony from all witnesses." He argues that if the facts were as the victim described, the trial court should have concluded that "Coley would have heard or at the very least seen behavior consistent" with her testimony. In addition, when Winston testified, he denied her claims. He asserts that there is nothing "to suggest either Winston or Coley fabricated their testimony." Winston acknowledges that he did not preserve his sufficiency argument for appeal but asks that the Court address it under the ends of justice exception to Rule 5A:18.

"No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011) (emphasis in original)).

Here, the record is insufficient for this Court to determine if Winston preserved his argument for appeal. The written statement of facts in lieu of a transcript merely states that Winston "made a motion to strike" and "a renewed motion to strike," without further explanation. In addition, the written statement of facts in lieu of a transcript states that "[c]losing arguments were made," without elaborating on those arguments.

Nevertheless, Winston asks this Court to invoke the ends of justice exception and consider his arguments. "The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (*en banc*) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997). "Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense." *Id.* Instead, to demonstrate that a miscarriage of justice has occurred, an "appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id.* at 222.

Winston contends that the evidence was insufficient to convict him of strangulation "when weighing the testimony of all witnesses." He acknowledges that "[t]his case is whol[l]y depend[e]nt on the credibility of witnesses." "'[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). Winston emphasizes that he denied the victim's allegations. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)); *see also Hall v. Commonwealth*, 69 Va. App. 437, 449-50 (2018).

In addition, physical evidence corroborated the testimony of the Commonwealth's witnesses. The Commonwealth presented photographs depicting the bruises around the victim's neck and her medical records indicated that her neck was swollen immediately after the incident. By convicting Winston, the trial court found the Commonwealth's witnesses to be more credible than Winston and his witness. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that a witness's testimony was not inherently incredible when it was corroborated by other evidence). Winston points to nothing in the record affirmatively proving that an element of the offense did not occur or that he was convicted for non-criminal conduct. *Redman*, 25 Va. App. at 222. Accordingly, the ends of justice exception does not apply, and Rule 5A:18 bars consideration of Winston's argument.

### B. Assignment of Error Related to Sentencing

Winston argues that the trial court abused its discretion by sentencing him "to two years and six months of incarceration when there was mitigation to support a sentence within the guidelines."

He asserts that the evidence showed that he was "a hard worker who gave support to his family" and that "[h]e had a history of employment and would ride his bicycle to and from work to be able to support his family." Additionally, Winston notes that he had a "very limited criminal record absent [of] any felonies."

"The determination of sentencing lies within the sound discretion of the trial court. A sentencing decision will not be reversed unless the trial court abused its discretion." *Garibaldi v. Commonwealth*, 71 Va. App. 64, 67 (2019) (quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Du v. Commonwealth*, 292 Va. 555, 564-65 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). The sentencing guidelines "are discretionary, rather than mandatory." *Woodard v. Commonwealth*, 287 Va. 276, 281 (2014) (quoting *West v. Director, Dep't of Corr.*, 273 Va. 56, 65 (2007)). A judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F).

It was within the trial court's purview to weigh the mitigating evidence Winston presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

Here, the record demonstrates that the trial court heard the mitigating evidence Winston cites on appeal. Balanced against that, however, was the strangulation of the victim, the impact it had on her life, and the impact it had on her family. After considering all the circumstances, the trial court imposed the sentence that it deemed appropriate. Furthermore, Winston's sentence

was within the statutory range set by the legislature for a conviction for strangulation. *See* Code §§ 18.2-10(f) and -51.6. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Du*, 292 Va. at 565). Therefore, we do not disturb the trial court's sentencing decision.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's decision.

*Affirmed.*