COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,[*] Athey and Fulton
Argued at Norfolk, Virginia


KEYON LEROY CHERRY

                                      MEMORANDUM OPINION[**] BY

v.      Record No. 1906-22-1             JUDGE ROBERT J. HUMPHREYS
                                         MARCH 12, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
W. Revell Lewis, III, Judge

Charles E. Haden for appellant.

Jessica Bradley, Assistant Attorney General (Jason S. Miyares,
Attorney General; Rebecca M. Garcia, Assistant Attorney General,
on brief), for appellee.


Following a bench trial, the circuit court convicted Keyon Leroy Cherry of possessing a

firearm having previously been convicted of a felony, in violation of Code § 18.2-308.2(A),

possessing cocaine, in violation of Code § 18.2-250, and possessing a firearm while possessing a

Schedule I or II controlled substance, in violation of Code § 18.2-308.4. Cherry argues on

appeal that the circuit court erred by (1) denying his motion to suppress the evidence obtained

following a traffic stop and (2) finding the evidence sufficient to support his convictions.

---

[*] Judge Humphreys prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on December 31, 2023.

[**] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Before trial, Cherry moved to suppress cocaine and a firearm that law enforcement seized after stopping a vehicle in which Cherry was a passenger. He argued that the police lacked reasonable suspicion to believe that the vehicle's occupants were engaged in criminal activity at the time of the stop. On the night of the stop, Exmore Chief of Police Angelo DiMartino was patrolling in the "New Roads" area of Exmore, a small community on the Eastern Shore of Virginia. Around 10:25 p.m., he heard ten gunshots followed by a slight pause and then ten more gunshots. He reported the gunshots to the dispatch officer.

Exmore Police Officer Tyler Hinman responded to the dispatch by driving to a school on Broadwater Road, southwest of the New Roads area. A man there told Officer Hinman that he had also heard gunshots. The man's mother had reported that "two subjects, possibly armed, had walked through their backyard." Their house was on the corner of Occohannock Neck Road and Broadwater Road, slightly northwest of the New Roads area and separated from that area by woods.

Northampton County Sheriff's Deputy Christopher Lee Forbes testified that Officer Hinman told him that two suspects were seen walking behind a house on Broadwater Road and that one of the suspects was wearing all black with a black mask and was carrying a firearm. Deputy Forbes drove to an apartment complex near the New Roads area to search for the

- 2 -

suspects. Using night-vision goggles, Deputy Forbes watched the wood line and the nearby roads and observed "a gray SUV going up and down" one of the area roads that led to a dead end.[1] He testified that "[t]he vehicle would go in, turn around, come back out, go back in, turn around, come back out, turn around, go back into the dead-end area." Deputy Forbes notified dispatch about the SUV.

Deputy Forbes then encountered two individuals walking down the street, one of whom was wearing all black and had a black ski mask. When Deputy Forbes asked the men if he could talk to them, the man in the ski mask walked to a house while the other man walked into the woods. Deputy Forbes talked to the man near the house, who denied involvement in the shooting. After about two minutes, the suspect near the house ran into the New Roads area. Deputy Forbes gave chase but ultimately lost sight of the suspect.

Less than two minutes later, Deputy Forbes saw what appeared to him to be the gray SUV he saw earlier. The vehicle drove down Frederick Douglass Road and turned right onto Ruth Wise Drive toward the highway. Deputy Forbes instructed the other units to stop the SUV and see if there was someone wearing all black inside.

Chief DiMartino testified that he received a radio dispatch to stop a silver SUV driving on Ruth Wise Drive toward the highway. He stopped a vehicle that "looked silver" approximately 800 yards away from where Deputy Forbes was standing. Chief DiMartino did not observe any traffic infraction or other basis to stop the vehicle. A woman was driving, Cherry was in the front passenger seat, and a second woman and a baby were in the back seat. Chief DiMartino drew his firearm and ordered the passengers to keep their hands where he could see them. When Cherry reached down with his right hand, Chief DiMartino again ordered

---

[1] It is unclear from the record whether Deputy Forbes meant Jane Pittman Street or Harriet Tubman Drive; both culminate in dead ends at the wood line.

Cherry to put his hands in the air and repeatedly threatened to shoot him before ultimately removing him from the vehicle.

Rashonda Byrd testified that she lived on Frederick Douglass Road and that Cherry was at her house on the night of the stop. Around 11:00 p.m., Byrd, Cherry, Charity Webb (Byrd's sister), and Webb's 11-month-old child left Byrd's house to go to Royal Farms. Webb was driving what Byrd characterized as a blue or "[b]luish-greenish" vehicle. They turned onto Ruth Wise Drive where the police stopped them. Webb provided substantially similar testimony. She denied that the party had been driving around before leaving for Royal Farms.

The circuit court denied Cherry's suppression motion. Specifically, the court found that the events took place from approximately 10:25 p.m. until 11:05 p.m. and that it was "fair to infer" that the occupants of the vehicle Deputy Forbes saw driving on the dead-end roads were "looking to pick somebody up." The court further found that the vehicle in which Cherry was a passenger matched the description given by Deputy Forbes.[2] Accordingly, the court concluded that there was reasonable articulable suspicion for the police to stop the vehicle.

The parties stipulated that the testimony at the suppression hearing would also serve as trial evidence. Northampton County Sheriff's Sergeant Steve Lewis testified that Cherry continued reaching back toward his seat even as Sergeant Lewis removed him from the vehicle. The Commonwealth presented evidence that the police discovered a firearm in the map pocket of

---

[2] The court further found that it was reasonable to remove Cherry from the car because of his failure to obey Chief DiMartino's commands to stop reaching. In so finding, the court stated that "it was at that point that he was seized when he was removed from the car." Cherry does not assign error to that statement, and we "will not fix upon isolated statements of the trial judge taken out of the full context in which they were made." *Jeffrey v. Commonwealth*, 77 Va. App. 1, 10 n.5 (2023) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). Cherry's sole argument below was that the police lacked reasonable articulable suspicion to stop the vehicle. We therefore focus solely on the circuit court's finding that the police possessed reasonable articulable suspicion to stop the vehicle and not on the officers' subsequent actions.

the front passenger door with the grip plainly visible as well as cocaine on Cherry's seat, between the front passenger seat and the center console, and on a newspaper between the seats. Webb testified that she owned the firearm and presented receipts indicating that she had purchased the gun.

The circuit court denied Cherry's motion to strike the evidence and found Cherry guilty, finding that his hand movements "clearly indicate[d] that [he] knew" that the gun and drugs were there. Cherry now appeals.

ANALYSIS

I. Cherry's Suppression Motion

A "claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact." *Turner v. Commonwealth*, 75 Va. App. 491, 500 (2022) (quoting *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002)). Accordingly, "we defer to the circuit court's findings of 'historical fact' unless such findings are 'plainly wrong or devoid of supporting evidence.'" *Id.* (quoting *Saal v. Commonwealth*, 72 Va. App. 413, 421 (2020)). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." *Merid v. Commonwealth*, 72 Va. App. 104, 109 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits only unreasonable searches and seizures." *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009) (quoting *James v. Commonwealth*, 22 Va. App. 740, 745 (1996)). "Reasonableness is judged from the perspective of a reasonable officer on the

scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Id.* (quoting *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995)).

If "there are articulable facts supporting a reasonable suspicion" that a person is engaged in unlawful conduct, a police officer may, without violating the Fourth Amendment, stop that person "briefly while attempting to obtain additional information." *Sidney v. Commonwealth*, 280 Va. 517, 524 (2010) (quoting *Hayes v. Florida*, 470 U.S. 811, 816 (1985)). Reasonable suspicion is less than probable cause but more than an "inchoate and unparticularized suspicion or 'hunch.'" *Atkins v. Commonwealth*, 57 Va. App. 2, 19 (2010) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

We conclude that the police had reasonable suspicion to stop the vehicle in which Cherry was a passenger. Chief DiMartino heard 20 gunshots late at night while patrolling in a residential area, gunshots that were corroborated by another Exmore resident. The police had reports that two suspects, one of whom was possibly armed and wearing all black, were in the area. Deputy Forbes encountered two individuals matching that description near a road with a dead end. One of the individuals fled when Deputy Forbes tried questioning him. Around the same time, Deputy Forbes observed a gray SUV drive down that dead end, make a U-turn, and then do so again several more times. These articulable facts made it reasonable for Deputy Forbes to believe that the SUV was looking for the suspects and may have information about the shooting.

Cherry emphasizes Byrd's and Webb's testimony that their vehicle was bluish-green rather than gray or silver. The circuit court listened to testimony from the Commonwealth's witnesses that the vehicle appeared to be gray or silver and made a factual finding that the vehicle matched Deputy Forbes's description. We are bound by that factual finding. Whether the vehicle actually was the same vehicle Deputy Forbes observed a short time earlier does not

alter the analysis because "a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake." *Heien v. North Carolina*, 574 U.S. 54, 57 (2014).

Cherry's remaining arguments are also unavailing. Although Officer Hinman did not provide a detailed description of the two suspects, his description, coupled with the suspects' flight, made it reasonable for Deputy Forbes to suspect them of being involved in the shooting. Although Chief DiMartino testified that the gunshots were not in the New Roads area, there was reason to believe the shooting suspects traveled from the direction of the gunshots to the New Roads area along the wood line. Finally, although it is possible to discharge a firearm without committing a crime, that does not mean that the police are prohibited from investigating the sound of 20 gunshots fired in a residential area after 10:00 p.m. *Turner*, 75 Va. App. at 502 ("[T]he 'mere possibility of an innocent explanation' does not necessarily exclude a reasonable suspicion that criminal activity is afoot." (quoting *Hill v. Commonwealth*, 297 Va. 804, 815 (2019))). Accordingly, the circuit court did not err in concluding that the police had reasonable suspicion to believe that the SUV's occupants were involved in the same criminal activity as the suspects that Deputy Forbes encountered on foot.

## II. Sufficiency of the Evidence

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021)). The question on appeal is "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Rock v. Commonwealth*, 76 Va. App. 419, 434 (2023) (quoting *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021)). "If there is evidentiary support for the conviction, 'the reviewing

court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

Cherry argues that the evidence was insufficient to establish that he constructively possessed the firearm or cocaine. Code § 18.2-308.2(A) provides that it is unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." Code § 18.2-250(A) makes it "unlawful for any person knowingly or intentionally to possess a controlled substance." Finally, Code § 18.2-308.4(A) makes it "unlawful for any person unlawfully in possession of a controlled substance . . . to simultaneously with knowledge and intent possess any firearm."

Possession of a firearm or possession of controlled substances may be actual or constructive. *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018); *Wright v. Commonwealth*, 53 Va. App. 266, 278-79 (2009). "Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the [firearm] and that it was subject to his dominion and control.'" *Hall*, 69 Va. App. at 448 (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (en banc)). "While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008) (citing *Rawls v. Commonwealth*, 272 Va. 334, 350 (2006)).

We are bound by the circuit court's factual determination that Cherry was reaching down to his right side during the traffic stop. The firearm was in the front passenger map pocket in plain view. A reasonable fact finder could conclude from these facts that Cherry was aware of

- 8 -

the firearm's presence and could exercise control and dominion over it. Similarly, police found cocaine on Cherry's seat, in between his seat and the center console, and on top of a newspaper in between the seats. A reasonable fact finder could conclude that Cherry's reaching movements and the obvious presence of the cocaine was sufficient to prove constructive, if not actual, possession of the cocaine. In short, Cherry was not, as he argues, "merely a passenger inside a car with two other adults, all of whom were in proximity to the firearm and cocaine." The firearm and cocaine were closer to Cherry than the other passengers, and Cherry was the only passenger who repeatedly reached toward the contraband despite being ordered at gunpoint to stop doing so. Moreover, whether Webb owned the firearm is irrelevant. The statutes prohibit possession, not ownership, and "the Commonwealth does not have to prove that possession was exclusive." *Rawls*, 272 Va. at 350. Accordingly, sufficient evidence supports Cherry's convictions.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*