COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, AtLee and Senior Judge Annunziata
Argued by teleconference

UNPUBLISHED

CHRISTOPHER LOUIS SMITH

                                                    MEMORANDUM OPINION[*] BY
   v.       Record No. 0723-19-4                    JUDGE ROSEMARIE ANNUNZIATA
                                                    MAY 5, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Steven S. Smith, Judge

Kimberly Hackbarth for appellant.

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Christopher L. Smith, appellant, was convicted of possession of a firearm after having

been adjudicated a felon, in violation of Code § 18.2-308.2, and possession of a firearm while in

possession of a Schedule I/II controlled substance, in violation of Code § 18.2-308.4.  He argues

on appeal that the evidence did not prove that he knowingly and intentionally possessed the

firearm that a police officer found in a shoebox in appellant's hotel room.  For the following

reasons, we affirm the convictions.

BACKGROUND

Under settled principles, we state the facts in the light most favorable to the

Commonwealth because it prevailed in the trial court.  Gerald v. Commonwealth, 295 Va. 469,

472 (2018).  So viewed, the evidence established that on March 28, 2017, Prince William County

police officers conducted surveillance on appellant at a hotel after the hotel's management

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reported that, based on activity around appellant's room, appellant possibly was engaged in prostitution. The officers saw appellant leave the hotel with another man, later identified by appellant as "Dion," walk to a Kia SUV in the parking lot, lift the hood, and "mess[] with something" on the left side of the engine before driving away. Appellant stopped at a 7-Eleven and then went to another location where he picked up his girlfriend and her two children. Appellant next drove to an area known as the "warehouse" where Dion exited the SUV. Appellant interacted with an unknown individual in the parking lot and again seemed to "mess with something" under the vehicle's hood before leaving. Appellant returned to the hotel and met another man in the parking lot. At that point, the police arrested appellant for driving on a suspended operator's license.

Appellant admitted that he had four or five grams of heroin under the hood of the SUV, which the police officers recovered. The officers found $996 cash and a white straw with drug residue in appellant's right rear pocket, a mobile phone, and two hotel keys for appellant's hotel room. Appellant admitted selling heroin but claimed that his girlfriend, Yoki Carpenter, had nothing to do with the drug sales. Appellant said that the hotel room was registered to Carpenter but that he stayed there with her and the children.

Carpenter gave the police permission to search the hotel room. In the closet the officers found a New Balance shoebox for size 10.5 sneakers. The inventory number on the shoebox matched the inventory number on the size 10.5 shoes appellant was wearing. A 9mm Glock 43 handgun and two 9mm Glock 43 magazines with ammunition for the handgun were inside the box. The police also found sandwich bags, a blender, and a pot with heroin residue in the closet. An empty peanut bag and a receipt dated March 28, 2017 from Cabela's for peanuts and a Glock 43 magazine were found in the room's trash can.

A police detective later went to Cabela's, which was about one-quarter mile from the hotel, and looked at surveillance video that corresponded with the time on the receipt. The video showed appellant entering the store, selecting the magazine from the firearms section of the store, choosing a bag of peanuts, and paying for both items. Dion was seen with appellant in the store.

While other officers were searching the hotel room, a detective talked with appellant at the police station. Appellant was forthcoming about selling drugs, but denied that he had a firearm. At one point during the interview, appellant asked if the weapon the police had found in the room was a Taurus. The detective said that it was a Taurus, although he had not been given that information and did not know until later that the weapon was a Glock. Appellant then said that the firearm was Dion's and that he had seen Dion with it the previous day.

Both the handgun and the two magazines were submitted to the state laboratory for forensic testing, but no fingerprints of value were obtained from the items. The police conducted additional surveillance at the warehouse but were unable to locate Dion.

Appellant testified at trial that he kept his belongings in the hotel room closet and that the shoebox was his, but he denied any knowledge of the Glock firearm. Appellant said that Dion wanted to buy the magazine, but appellant purchased it for him because Dion did not have any ID. Appellant acknowledged that he was not asked for ID when he paid for the magazine. He said that Dion gave him $50 for the magazine.

Appellant also testified that he and Dion went directly from Cabela's to pick up Carpenter and the children before going to the warehouse, but the officers who followed appellant from the hotel said that appellant had not gone to Cabela's before meeting Carpenter. The Commonwealth presented an audio recording of a phone call appellant had made to Carpenter from the jail in which he said, "they found the hammer." He also agreed when she

said, "if they wanted to charge you with possession, they should have waited until you got back in the room."

The trial court stated that it did not believe appellant's explanation that the firearm was Dion's and found that the circumstantial evidence was sufficient to prove that appellant was in possession of the firearm. This appeal followed.

ANALYSIS

When reviewing a challenge to the sufficiency of the evidence, the judgment of the trial court is presumed correct; we may set the judgment aside only if it "is plainly wrong or without evidence to support it." Code § 8.01-680; Pijor v. Commonwealth, 294 Va. 502, 512 (2017). Given that presumption, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).

Additionally, "[c]ircumstantial evidence [presented during the course of the trial] is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Holloway v. Commonwealth, 57 Va. App. 658, 665 (2011) (*en banc*) (quoting Coleman v. Commonwealth, 226 Va. 31, 53 (1983)). Circumstantial evidence is not "viewed in isolation." Brown v. Commonwealth, 54 Va. App. 107, 119 (2009) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479 (2005)). Rather, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Id.

Possession of a firearm may be actual or constructive and also may be joint or shared. See Kelly v. Commonwealth, 41 Va. App. 250, 261 (2003) (*en banc*). A conviction for

- 4 -

possession requires proof that "the defendant was aware of both the presence and the character of the [contraband] and that it was subject to his dominion and control." Hall v. Commonwealth, 69 Va. App. 437, 448 (2018) (quoting Logan v. Commonwealth, 19 Va. App. 437, 444 (1994) (*en banc*)). Such proof may be shown by "evidence of acts, statements, or conduct of the accused or other facts or circumstances." Id. Proximity to contraband is not by itself sufficient proof of possession, but it is a factor to be considered. See Watts v. Commonwealth, 57 Va. App. 217, 233 (2010). Whether the evidence established possession is "largely a factual" issue. Smallwood v. Commonwealth, 278 Va. 625, 631 (2009) (quoting Ritter v. Commonwealth, 210 Va. 732, 743 (1970)); accord Raspberry v. Commonwealth, 71 Va. App. 19, 30 (2019). The fact finder may draw reasonable inferences from basic facts to ultimate facts. See Kelly, 41 Va. App. at 257-58.

Where a case is based on circumstantial evidence, as it is here, the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence. See Tyler v. Commonwealth, 254 Va. 162, 166 (1997). The Commonwealth is not required to "negate what 'could have been' or what was a 'possibility.'" Nelson v. Commonwealth, 281 Va. 212, 217-18 (2011). Whether a defendant's "hypothesis of innocence is reasonable is a question of fact." Wood v. Commonwealth, 57 Va. App. 286, 306 (2010) (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277 (2004)).

Appellant argues that the evidence did not prove that he possessed the firearm. However, the weapon was found in a shoebox in the closet of the hotel room where appellant stayed with his girlfriend and her children. The police saw appellant with Dion at the hotel, but there was no evidence that Dion stayed there. Appellant had two room keys in his pocket when he was arrested. See Hall, 69 Va. App. at 448 (finding the evidence sufficient to convict the defendant of drug possession where the police saw him leaving the residence on the morning the search

was conducted). Appellant admitted that the shoebox was his and that the shoes he was wearing had come from the box. See Raspberry, 71 Va. App. at 30-31 (concluding that the fact finder could infer from the condensation on two bottles found in a bag with two firearms in the car the defendant was driving had been placed in the bag recently, and was a factor tending to establish that the defendant possessed the firearms). Appellant also admitted that he was a drug dealer. The connection between drug dealers and firearms is well established. See id. at 31.

Appellant's testimony that the handgun was Dion's was not corroborated by other evidence. Appellant said that Dion had a Taurus handgun, not a Glock, but appellant also said that he bought a Glock 43 magazine for Dion. A police officer testified that a Glock 43 magazine only fits a Glock 43 handgun. The fact that no packaging for the magazine was found in the hotel room is of no consequence. The packaging could have been discarded elsewhere immediately after the purchase. Even assuming the firearm was Dion's, actual ownership is not the "vital issue" because a firearm may be possessed jointly. Smallwood, 278 Va. at 631 (quoting Burnette v. Commonwealth, 194 Va. 785, 792 (1953)) (holding evidence was sufficient to prove defendant had joint constructive possession of firearm found in plain view in vehicle, even though passenger was actual owner of both vehicle and firearm); see also Redmond v. Commonwealth, 57 Va. App. 254, 265-66 (2010) (affirming conviction for possession of firearms by a convicted felon where defendant claimed firearms discovered in house he owned, and only sometimes lived in, belonged to adult son of defendant's girlfriend).

Further, the trial court did not find that appellant's testimony was credible. "Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." Dalton v. Commonwealth, 64 Va. App. 512, 525 (2015) (quoting Lea v. Commonwealth, 16 Va. App. 300, 304 (1993)) (first alteration in original). The trial court was "entitled to disbelieve the

self-serving testimony of the accused and to conclude that the accused [was] lying to conceal his guilt." Speller v. Commonwealth, 69 Va. App. 378, 388 (2018). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" Towler v. Commonwealth, 59 Va. App. 284, 291 (2011) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299 (1991)).

The trial court thus rejected appellant's hypothesis of innocence, finding that it was not reasonable. See Haskins v. Commonwealth, 44 Va. App. 1, 9 (2004) ("By finding the defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" (quoting United States v. Kemble, 197 F.2d 316, 320 (3d Cir. 1952))). The fact finder's rejection of a hypothesis of innocence is "binding on appeal unless plainly wrong." Archer v. Commonwealth, 26 Va. App. 1, 13 (1997). We find that the trial court reasonably determined from the totality of the evidence that appellant possessed the firearm.

## CONCLUSION

In sum, we hold that the evidence proved beyond a reasonable doubt that appellant knowingly and intentionally possessed the firearm that the police found in his hotel room. We thus affirm the convictions.

Affirmed.