# COURT OF APPEALS OF VIRGINIA

## Record No. 1675-24-1

### LIONEL WILLIAMS, JR., S/K/A LIONELL WILLIAMS, JR.
v.
### COMMONWEALTH OF VIRGINIA

Present: Judges Causey, White and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued April 21, 2026[*]

## FROM THE CIRCUIT COURT OF CITY OF CHESAPEAKE
H. Thomas Padrick, Jr., Judge Designate

Monica Tuck, Assistant Public Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE KIMBERLEY SLAYTON WHITE

After a bench trial, the circuit court convicted Lionel Williams, Jr., of possessing a firearm while distributing a controlled substance and possessing a firearm as a convicted violent felon. On appeal, Williams argues the evidence was insufficient to establish his constructive possession of the firearm.[2] Finding no error, we affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Williams also pleaded guilty to three charges of possessing a controlled substance with the intent to distribute, resisting arrest, and driving on a suspended license; he does not challenge these convictions on brief.

BACKGROUND[3]

Late one evening in October 2022, Chesapeake City Police Officers Weeks and Mael stopped Williams's pickup truck after seeing him run a red light and stop sign. Upon stopping, Williams immediately exited the truck and began yelling that his wife was dying and that "he had to get to his wife." The officers initially called for a medic but then realized that Williams was alone in the truck. The officers directed Williams to the back of his truck. Williams ignored the instruction and began to walk away. When Officer Mael attempted to detain Williams by placing his hands behind his back, Williams resisted and pulled away. The officers had to force Williams to the ground to make him comply. While on the ground, Williams accused the officers of beating him and continued to yell about his wife. The officers detained Williams, searched him, and put him in the back of their patrol vehicle. After he was placed in the patrol vehicle, Williams did not mention his wife again.

When he searched Williams, Officer Weeks recovered numerous bags of drugs—some in knotted corner bags and others in small jeweler's bags—one bag with two Oxycodone pills, several small bags containing MDMA, and marijuana in Williams's pants pockets. Officer Weeks also found five bags, each containing approximately a hundred tablets of methamphetamine, in Williams's jacket. The officers also recovered about $83 in cash.

The officers then searched Williams's truck and discovered packaging material in the cupholder near the dashboard and under the driver's seat. The found packaging material included small jeweler's bags the same size and shape as the bags found in Williams's pockets. Officer Mael

---

[3] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

found a firearm under the driver's seat. According to his testimony, "[y]ou were able to see like the very end of it kind of sticking out." Specifically, he said he could see the handle, as the gun was placed under "[t]he edge of the seat directly close to the steering wheel."[4] The circuit court also found that the gun was visible, saying, "they found the firearm which was, as I recall the testimony, kind of sticking out from under the driver's side." After Officer Weeks told Williams about the firearm, Williams yelled "mother-fucker." The officers also located Williams's birth certificate and three cell phones in the truck.

At trial, Detective Matthew McCleery, an expert in drug distribution, testified that the items seized from Williams's vehicle were consistent with the business of drug distribution. McCleery concluded that the stop occurred in a high drug area, the quantity and value of narcotics was inconsistent with personal use, and the presence of unused packing material and multiple cell phones indicated trafficking. McCleery noted that the presence of the firearm under the driver's seat supported the distribution inference, because guns and drugs shared a common nexus. McCleery stated that an individual involved in the sale of narcotics possesses a firearm "to protect himself from robberies, extortion or from having other possible crimes [committed] upon them." McCleery added that a firearm may "be used to threaten or intimidate a user/addict that may owe a debt."

After the Commonwealth presented the above evidence at a bench trial, Williams moved to strike, arguing that the evidence failed to prove his knowledge that the firearm was under the

---

[4] There is further testimony about how visible the gun was from various positions. Officer Mael testified that he did not "notice" the gun from a "normal position" of "going through the items on the seat." He then says he "could see the end of it sticking out" when he "changed his position" and "kind of positioned [his] body more toward the vehicle." Counsel for Williams asked Officer Mael whether he would have seen the gun if, from his position searching the items on the seat, he "[h]ad entered the vehicle to drive it in a customary fashion." He replied, "I believe it was sticking out just enough if—you would have been able to see like the edge of it sticking out."

driver's seat. The circuit court denied the motion. Williams then called his son, Diante Johnson, to testify on his behalf. Johnson testified that the truck belonged to his uncle who was in prison, but both he and his father used the truck regularly. Johnson also claimed that he owned a handgun, which he routinely stored under the driver's seat, and that he left it in the truck on the night that Williams was arrested. According to his testimony, he "had been drinking" at his house when Williams took the truck. Johnson testified that he attempted to call Williams around 2:30 a.m. "to let him know that [the gun] was in there," but the call went straight to voicemail. Johnson admitted that he never told the police he owned a firearm and that the seized gun looked like his, but was "[a] little more beat up." In response to William's trial counsel presenting the firearm to him and asking him if the firearm found during the search was his, Johnson replied, "I don't know. It got to be it, though, silver and black. I don't remember. Yeah, that's it." Johnson added that he didn't remember the serial number being scratched out. He said that his gun "won't like that."

At the close of evidence, Williams renewed his motion to strike, asserting that the evidence failed to prove that he knew the gun was in the truck. The circuit court found that the totality of the evidence proved beyond a reasonable doubt that Williams constructively possessed the firearm. The circuit court then convicted Williams of possessing a firearm while distributing a controlled substance and possessing a firearm as a violent felon. On appeal, Williams argues that the evidence failed to prove his actual knowledge that the firearm was under the driver's seat and that his son's testimony supported a reasonable hypothesis of innocence.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)

- 4 -

(quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"It is well-established that to obtain a conviction for such possessory offenses, the Commonwealth must produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the contraband with knowledge of its nature and character." *Garrick*, 303 Va. at 183. Possession can be actual or constructive. *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020).

"Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the [contraband] and that it was subject to his dominion and control.'" *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018) (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (en banc)). "While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the

defendant possessed the firearm." *Womack v. Commonwealth*, 82 Va. App. 289, 296 (2024) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). In determining whether a defendant "constructively possessed the firearm, we 'must consider the "totality of the circumstances disclosed by the evidence."'" *Id.* at 297 (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12 (1997)).

We conclude that the evidence supports the trial court's finding that Williams possessed the firearm. Immediately after the police initiated the traffic stop, Williams attempted to deceive and avoid the officers. He first began erratically yelling that his wife was dying. When the officers told Williams to step to the back of the truck, he attempted to walk away completely. Williams then physically resisted his detention, forcing the officers to wrestle him to the ground.

Officer Mael located the firearm under the driver's seat; part of the handle was in plain view. The gun was readily accessible to Williams when he was in the driver's seat. Williams shouted an obscenity when he realized the officers had found the gun. The officers recovered a large quantity of drugs from Williams's person. Detective McCleery testified that firearms and narcotics have a common nexus. Williams's erratic and evasive behavior, proximity to the firearm, and possession of a large quantity of narcotics support the trial court's conclusion that Williams was aware of the presence of the firearm and had dominion and control over it.

We are unpersuaded by Williams's contention that the evidence failed to prove his possession of the firearm because Johnson's testimony provided a reasonable hypothesis of innocence. The reasonable hypothesis of innocence principle "merely echoes 'the standard applicable to every criminal case.'" *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016) (quoting *Cook v. Commonwealth*, 226 Va. 427, 433 (1983)). "[W]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on [this Court] unless plainly wrong." *Clark v. Commonwealth*, 78 Va. App. 726, 752 (2023) (alterations in original) (quoting *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023)).

"Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004) (alteration in original) (quoting *Miles v. Commonwealth*, 205 Va. 462, 467 (1964)). "By finding the defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Id.* (quoting *United States v. Kemble*, 197 F.2d 316, 320 (3rd Cir. 1952)).

Here, Williams's hypothesis of innocence rests on his claim that the firearm belonged to Johnson. But Johnson conceded at trial that both he and his father used the truck regularly. And when asked to confirm that the seized firearm was his, the son confirmed that the firearm appeared familiar, but it was more "beat up" than he remembered it. Furthermore, possession of a firearm "need not always be exclusive." *Hamilton v. Commonwealth*, 16 Va. App. 751, 753 (1993). The Commonwealth's evidence showed that Williams had custody and control over the firearm when the officer encountered him. Williams's conduct implied his guilty knowledge of the presence of the firearm. Given the circuit court's discretion to weigh the credibility of the testimony in light of all the evidence, its rejection of Williams's alleged hypothesis is not plainly wrong.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*